**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re:<br><br>CAYMAN INVESTMENT FUNDS MASTER<br>SPC (IN OFFICIAL LIQUIDATION), *et al.*,[1]<br><br>              Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No.: 24-_____ (___)<br><br>(Joint Administration Requested) |

**DECLARATION OF R. CRAIG MARTIN IN**
**CONNECTION WITH THE EMERGENCY MOTION OF THE**
**FOREIGN REPRESENTATIVES FOR PROVISIONAL RELIEF**

R. CRAIG MARTIN, Esq., hereby declares as follows:

1.      I am a partner of the law firm of DLA Piper LLP (US) ("**DLA Piper**") and am admitted to practice law in Delaware, Texas, New York, Washington D.C., and Pennsylvania.  I maintain my principal office in Delaware and have affiliated with Ms. Nanes and Ms. McLemore in DLA Piper's Miami office located at 200 Biscayne Boulevard, Suite 2500, Miami, Florida 33131.

2.      DLA Piper is United States counsel to Samuel Cole and Mitchell Mansfield of Kroll (Cayman) Limited, in their capacities as Joint Official Liquidators (in such capacity, jointly and severally, the "**Foreign Representatives**") of Cayman Investment Funds Master SPC (in Official Liquidation) (the "**Master Fund**") and Cayman Investment Funds SPC (in Official Liquidation) (the "**Feeder Fund**", together with the Master Fund, the "**Foreign Debtors**") under section 131 of the Cayman Islands Companies Act (2023 Revision) in an official liquidation proceedings pending

---

[1]      The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's identification number, are: Cayman Investment Funds Master SPC (6367); and Cayman Investment Funds SPC (6368).  The location of the Debtors' service address for the purpose of these chapter 15 cases is: 3rd Floor, 90 North Church Street, George Town, Grand Cayman, Cayman Islands, KY1-1102.

before the Grand Court of the Cayman Islands, Financial Services Division Cause Nos. 340 and 341 of 2023 (RPJ).

     3.     I submit this Declaration to provide the Court with relevant materials in support of the *Motion of the Foreign Representatives for Provisional Relief* (the "**Provisional Relief Motion**") filed concurrently herewith.

     4.     As set forth more fully in the Provisional Relief Motion, the Master Fund is not named as defendant but is the true party in interest in the action captioned *Alliance Metals LLC v. C T Corporation System*, Case No. 2024-006339-CA-01 (the "**Florida Action**") pending before the Circuit Court of the Eleventh Judicial Circuit (the "**State Court**").

     5.     On or about September 11, 2018, the Master Fund entered into a Master Loan Agreement with Technocon International Inc. (D/B/A Alliance Metals) ("**Technocon**") and agreed to lend an aggregate principal amount of up to $20 million to Technocon (the "**Master Loan Agreement**"). Technocon pledged "any and all other assets" to secure its obligations owing under the Master Loan Agreement. *See* Master Loan Agmt., § 9. This pledge included all of the "rights, title and interests" in defined "Assigned Deposits." *Id*., Ex. C. In the Master Loan Agreement, Technocon also agreed to execute necessary documents to make all pledges fully valid and enforceable and further agreed that the Master Fund could "file UCC financial statements and amendments thereto and continuances thereof." *Id*.

     6.     The Master Fund used the services of C T Corporation System ("**CT**") to file UCC-1 financing statements in Florida to provide notice of its security interest in such assets. The UCC-1 financing statement #202301281322 (the "**Alliance UCC-1**") is attached to the Complaint (defined below) and states that CT was acting "as representative."

7.      On April 9, 2024, Alliance Metals, LLC ("**Alliance Metals**") filed a complaint (the "**Complaint**") against CT, demanding the withdrawal of the Alliance UCC-1.  CT has not appeared in the Florida Action, and on May 9, 2024, the State Court entered the *Clerks' Default Against Defendant, C T Corporation System* (the "**Clerk's Default**") against CT.

8.      On May 22, 2024, Alliance Metals filed the *Motion for Final Default Judgment Against Defendant, C T Corporation System* (the "**Motion for Final Default Judgment**").

9.      On June 4, 2024, the JOLs filed a motion to intervene in the Florida Action (the "**Motion to Intervene**") and a motion to vacate the Clerk's Default (the "**Motion to Vacate**").

10.     A hearing on the Motion for Final Default Judgment, Motion to Vacate and Motion to Intervene is scheduled for June 28, 2024, at 11:00 a.m. (the "**State Court Hearing**").

11.     In support of the provisional relief requested, attached to this declaration are the following documents from the Florida Action:

    a.  **Exhibit 1** is a true and correct copy of the Complaint.

    b.  **Exhibit 2** is a true and correct copy of the Master Loan Agreement.

    c.  **Exhibit 3** is a true and correct copy of the Clerk's Default.

    d.  **Exhibit 4** is a true and correct copy of the Motion for Default Judgment.

    e.  **Exhibit 5** is a true and correct copy of the Motion to Intervene.

    f.  **Exhibit 6** is a true and correct copy of the Motion to Vacate.

    g.  **Exhibit 7** is a true and correct copy of the *Amended Notice of Hearing* filed in the Florida Action.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 23, 2024
Wilmington, Delaware

By: _____
R. Craig Martin

## Exhibit 1

## Complaint

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI-
DADE COUNTY, FLORIDA

ALLIANCE METALS LLC,

     Plaintiff,

                             CASE NO.:

v.

C T CORPORATION SYSTEM, a Delaware
Corporation,

     Defendant.

_____/

## COMPLAINT

     Plaintiff, ALLIANCE METALS LLC ("Plaintiff" or "Alliance") sues Defendant, C T

CORPORATION SYSTEM ("Defendant"), and alleges:

### Jurisdiction and Venue

     1.    This is an action for declaratory judgment and equitable relief under section

817.535, Fla. Stat. and is thus within the circuit court's exclusive plenary jurisdiction.

     2.    Plaintiff, ALLIANCE METALS LLC, is, and at all material times was, a Florida

limited liability corporation with its principal place of business in Miami-Dade County, Florida.

     3.    Defendant, C T CORPORATION SYSTEM, is, and was, at all material times a

Delaware corporation lawfully conducting business in Florida, with its principal place of business

in New York County, New York.

     4.    Venue is proper in Miami-Dade County, Florida, because the cause of action

accrued here.

     5.    Plaintiff retained the undersigned attorneys to prosecute this Action and are

required to pay its attorney's fees for their services.

{00775549}                   1
STOK KON + BRAVERMAN
1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

6. All conditions precedent to bringing this action have been performed, excused, waived, or have otherwise occurred.

## General Allegations

7. Alliance Metals is an ISO certified secondary aluminum company which prides itself in producing high quality specification alloys in various shapes at competitive prices.

8. An entity related to Alliance entered into a Security Agreement with Prudent Group, but no document or agreement allowed the Defendant, or any other entity, to assert claims over all Alliance's assets or over the related entity's subsidiaries.

9. On May 10, 2023, the Defendant filed UCC-1 filing statement #202301281322 ("Filing Statement") in the Florida Secured Transaction Registry, listing the Plaintiff as the debtor, and the Defendant as the secured party as Prudent's representative. *See* UCC Filing Statement attached as **Exhibit "A."**

10. The Financing Statement listed the covered collateral as "all assets of the debtor including, but not limited to, any and all equipment, fixtures, inventory, accounts receivable, chattel paper, documents, instruments, investment property, general intangibles, letter of credit rights, equity ownership and subsidiaries, and deposit accounts now owned and hereafter acquired by the debtor." *Id*.

11. No agreement ever existed between Alliance or any related entity that pledged all Alliance's assets to anyone.

12. On March 15, 2024, Alliance demanded that Defendant remove the UCC Filing Statement, citing its fundamental impropriety. Defendant has refused to remove the UCC Filing Statement and has not responded to Alliance's demand. *See* Letter Demanding Removal of Financing Statement attached as **Exhibit "B."**

13.    Defendant's filing and refusal to remove the inaccurate and deceptive Financing Statement inflicted substantial harm on Alliance. The erroneous Filing Statement falsely asserts a lien and casts a shadow over the title of the Plaintiff's assets, lacking any legal justification or valid basis. Consequently, Alliance must bring this Action to address Defendant's erroneous Filing Statement.

## COUNT I- DECLARATORY JUDGMENT

14.    Plaintiff realleges and incorporates the allegations in paragraphs 1 through 13 as if fully set forth herein.

15.    This is a cause of action for declaratory relief under Chapter 86, Florida Statutes and section 817.535, Florida Statutes.

16.    Under section 817.535(8)(a):

Any person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action under this section without regard to whether criminal charges are pursued under subsection (2).

17.    By filing, recording, and registering the Filing Statement in the Official Records of the Florida Secured Transaction Registry, Plaintiff reasonably believes, but is uncertain, that Defendant has filed a materially false, fictitious, or fraudulent statement or representation.

18.    The filing, recording, or registering of the false Financing Statement by the Defendant has created a present and imminent threat of harm because of its falsity and because it has the effect of causing irreparable injury, i.e., incalculable financial injury, by purporting to be a lien on and clouding the title of Alliance's assets.

19.    Plaintiff has a bona fide, actual, present, and practical need for a declaration concerning its respective rights and legal obligations under the false Financing Statement.

20.    Plaintiff has an actual and present interest in the subject matter of this action and

its respective interests are adverse to Defendant's, which is that there is another agreement in place that pledged all of Alliance's assets.

21.      Plaintiff is in doubt as to its respective rights and legal obligations under the false Financing Statement and allege that the false Financing Statement is false, fictitious, and fraudulent.

WHEREFORE, Plaintiff request a declaration that the that there is no factual or legal basis or foundation for the false Financing Statement filed, recorded, or registered by Defendant; that the False Financing Statement is null, void *ab initio*, and of no legal force or effect; that Defendant had no legal right to file, record, or register the false Financing Statement in the Official Records of Florida Secured Transaction Registry, any recorder of official records, or anywhere else; together with attorney's fees under Fla. Stat. 817.535(8)(c) and costs, interest, and such further, supplementary, ancillary, necessary and proper relief that the Court deems appropriate.

## COUNT II- VIOLATION OF FLA. STAT. 817.535

22.      Plaintiff realleges and incorporates the allegations in paragraphs 1 through 13 as if fully set forth herein.

23.      On May 10, 2023, Defendant recorded the unauthorized Filing Statement on Alliance in the Florida Secured Transactions Registry, notwithstanding that it lacked a proper legal basis or authorization to do so.

24.      No agreement exists, past or present, between Alliance or its affiliates and the Prudent Group, let alone C T Corporation System, that pledges all Alliance's assets.

25.      There is no documentation or agreement permitting the Defendant, or any other entity, to assert claims over the assets of any subsidiary, including Alliance.

26.     The authority to file a UCC-1 encompassing Alliance's assets is non-existent. The filed UCC-1 surpasses the allowable scope outlined in the Security Agreement entered into by the affiliates.

27.     The Defendant filed the Filing Statement, which contained materially false, fictitious, or fraudulent statements or representations—that it had a security interest in "all assets of the Debtor." These actions have harmed and clouded the title of Alliance's assets.

WHEREFORE, the Plaintiff, ALLIANCE METALS LLC, respectfully requests judgment be entered against Defendant, C T CORPORATION SYSTEM, and order that the Financing Statement be sealed from the public record and removed from all electronic databases indexing the Financing Statement, together with attorney's fees under Fla. Stat. 817.535(8)(c) and costs, interest, and such further, necessary and proper relief that the Court deems appropriate.

WHEREFORE, Plaintiff, ALLIANCE METALS LLC, respectfully demands judgment against the Defendant, C T CORPORATION SYSTEM, (a) declaring that the UCC-1 filing statement #202301281322 is null and void *ab initio* and ordering that the UCC-1 filing statement #202301281322 be sealed from the official record and removed from any database used to index or locate documents in the official record; (b) awarding attorney's fees under Fla. Stat. 817.535(8)(c); (c) awarding prejudgment interest; and (d) awarding all such other relief as this Court deems just and proper.

Dated: April 9, 2024

Respectfully submitted,

STOK KON + BRAVERMAN
*Attorneys for Alliance Metals, LLC.*
1 East Broward Boulevard, Suite 915
Fort Lauderdale, FL 33301
Email: service@stoklaw.com

By: _/s/ Joshua R. Kon_
        JOSHUA R. KON, ESQ.
        Florida Bar No. 56147
        (jkon@stoklaw.com)
        YOSEF Y KUDAN, ESQ.
        Florida Bar No. 1010261
        (ykudan@stoklaw.com)
        MITCHELL J. COHEN, ESQ.
        Florida Bar No. 1048683
        (mcohen@stoklaw.com)

{00775549}      6

STOK KON + BRAVERMAN
1 E. Broward Boulevard, Suite 915 • Fort Lauderdale, FL 33301 • P.954.237.1777 • F.954.237.1737 • E-mail: service@stoklaw.com

# EXHIBIT A

**FINANCING STATEMENT FORM**

**FILED**

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON

Wolters Kluwer Lien Solutions; (800)331-3282
Email ctlsweback@wolterskluwer.com

2023 May 10 09:53 AM

****** 202301281322 ******

B. SEND ACKNOWLEDGEMENT TO:

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| ALLIANCE METALS LLC | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | This space not available. | |
| 1111 KANE CONCOURSE | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 518 | Bay Harbor Islands | FL | 33154 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One | | This space not available. | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| C T Corporation System, as representative | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | This space not available. | |
| 330 N Brand Blvd | | | |

| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| Suite 700; Attn: SPRS | Glendale | CA | 91203 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All assets of the Debtor including, but not limited to, any and all equipment,
fixtures, inventory, accounts receivable, chattel paper, documents, instruments,
investment property, general intangibles, letter-of-credit rights, equity ownership
in subsidiaries, and deposit accounts now owned and hereafter acquired by Debtor.

| 5. ALTERNATE DESIGNATION (if applicable) | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR |
|---|---|---|---|
| | ☐ AG LIEN | ☐ NON-UCC FILING | ☐ SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**   92869119-66547530

STANDARD FORM - FORM UCC-1 (REV.05/2013)     Filing Office Copy     Approved by the Secretary of State, State of Florida

# EXHIBIT B



1 EAST BROWARD BLVD., SUITE 915
FORT LAUDERDALE, FL 33301
T. 954-237-1777 F. 954-237-1737

March 15, 2024

**VIA CERTIFIED MAIL #**
**RETURN RECEIPT REQUESTED**
Wolters Kluwer Lien Solutions
330 North Brand Blvd., Suite 700
Glendale, CA, 91203
Attn: SPRS

     *Re: Demand For Removal of UCC-1 Liens: Sinai Holdings, LLC., Technocon*
     *International, Inc., and Alliance Metals LLC*

To whom it may concern:

     We are writing to you on behalf of our clients, Sinai Holdings, LLC ("Sinai"), Technocon International, Inc. ("Technocon"), Alliance Metals LLC ("Alliance"), and their subsidiaries (collectively referred to as "clients"), regarding UCC-1 liens held by "C T Corporation System" as the secured party against their interests, filed by Wolters Kluwer Lien Solutions ("Wolters Kluwer"). It has recently come to our attention that these liens exist, and we demand their immediate removal through the execution of UCC-3 filings. For your reference, the filing numbers of these liens in the Florida Secured Transaction Registry are as follows:

- ALLIANCE METALS LLC; Document #202301281322
- TECHNOCON INTERNATIONAL, INC; Document #202000919926
- SINAI HOLDINGS LLC; Document #202000757810

     It is imperative to emphasize that there has never been, nor is there presently, any agreement between our clients and the Prudent Group, much less C T Corporation System, that pledged our clients' assets via a security agreement. In addition, these UCC-1s purport to lien and cloud the title of the assets belonging to our clients, which has no agreement with Prudent Group, C T Corporation or Wolters Kluwer.

     Furthermore, it is crucial to emphasize that Sinai and Technocon have only ever authorized a lien on their equity ownership in its subsidiaries as collateral. No document or agreement allows Wolters Kluwer, or any other entity, to assert claims over the assets of a subsidiary, Alliance included. Hence, the submission of Document #202301281322 is, fundamentally, improper. There is no authority to file a UCC-1 encompassing Alliance's assets. The filed UCC-1 exceeds the permissible scope of any of the financing agreements that Sinai, Technocon, or Alliance have entered into.

     We urge you to promptly address this matter by executing UCC-3 filings to remove the UCC-1 liens. Failure to do so within five (5) days will necessitate the pursuance of all available legal or equitable remedies to safeguard our clients' rights and interests.

{00771694}              1



1 EAST BROWARD BLVD., SUITE 915
FORT LAUDERDALE, FL 33301
T. 954-237-1777 F. 954-237-1737

We trust that you will approach this matter with the urgency and professionalism it warrants. Kindly provide confirmation of the completion of the UCC-3 filings at your earliest convenience.

PLEASE TAKE NOTE OF THE FOREGOING AND GOVERN YOURSELF ACCORDINGLY.

Very truly yours,

Stok Kon + Braverman

/s/ *Joshua R. Kon*
JOSHUA KON, ESQ.
For the firm

## **Exhibit 2**

**Master Loan Agreement**



# MASTER LOAN AGREEMENT

## MLA - NAO E1-091118 USD

### PREAMBLE

**THE MASTER LOAN AGREEMENT** with the following number and identification code NAO E1-091118 USD between PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER SP and TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS) and regulates the terms and conditions outlined below by and between:

(A) On one hand: PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER, with registered office at 103 South Church Street, PO Box 10240, KY1-1002, Grand Cayman, Cayman Island, represented by its Investment Manager and Directors, hereafter referred to as the "LENDER",

(B) On the other hand: TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS), headquartered at 1111 Kane Concourse, 518 Bay Harbor Island, 33154 Florida, USA with the following FEI Number: 65-0542741 and Florida Document Number of P94000091060, hereafter referred to as "BORROWER".

**WHEREAS** the Lender and the Borrower have agreed that the Lender will finance the transactions in loan receivables or other financing instruments or any profit participation arrangement directly or indirectly executed by the Borrower in the aggregate amount specified in Section 2 pursuant to the terms and conditions of this Agreement. The Lender has the right to send any partial amount at any time convenient for the Lender to the account of the Borrower;

**WHEREAS** in consideration for this Loan, the Borrower will ensure the delivery to the Lender of unencumbered, fully perfected, third party security interests in accordance with the provisions of Section 9 of this Agreement;

The Lender and the Borrower are hereinafter referred to together as the "Parties" and each individually as a "Party".



**NOW THEREFORE,** the parties hereto agree as follows:

## Section 1 – Definitions

Wherever used in this Agreement, the terms below shall have the following meanings;

a)  **"Confidential Information"** means any information that the Borrower has furnished or will furnish to the Lender according to this Agreement, but does not include any such information that is or becomes generally available to the public (other than as a result of a breach by the Lender of its obligation hereunder) or that is or becomes available to the Lender from a source other than the Borrower;

b)  **"Effective Date"** is when the money is received by the borrower;

c)  **"USD"** shall mean the lawful currency of the United States of America;

d)  **"Loan" or "Master Loan Agreement"** shall have the meaning ascribed to it in Section 2 hereof;

e)  **"Payment Date"** means any day and date between date of signing this document until the loan is fully repaid after the Effective Date upon which the Loan (together with accrued interest) shall have been repaid in full by the Borrower;

f)  **"Term"** means the seven (7) year anniversary of the date which this contract is executed;

g)  **"Extensions and rollover of the Master Loan Agreement"** means the express renewal of the Master Loan Agreement for an additional period as of the penultimate date of the Term by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

Words importing the singular include the plural and vice versa and the neutral gender shall include the feminine and masculine genders.

## Section 2 - Agreement for the Loan

Subject to the terms and conditions of this Agreement the Lender agrees to provide financing to the Borrower and the Borrower agrees to become the debtor of the Lender, for an aggregate amount of USD twenty million dollars (USD 20,000,000). This amount can be made available by the Lender to the Borrower in one or multiple transfers to either of the accounts indicated in this Master Loan Agreement, at the sole discretion of the Lender.



## Section 3 - Interest Rate

Any amount received under the Master Loan Agreement shall bear annual interest in USD of seventeen percentage points (17.0%) until the Loan is either repaid, withdrawn or extended by the respective Parties prior to such date. For the sake of clarity, this Interest Rate shall be calculated as a simple annual interest rate calculated over a 360-day annual year basis.

## Section 4 - Disbursement of the Loan and Banking Details

### a) **General Overview**:

Disbursement of each Loan under the Master Loan Agreement will be executed by the Lender from the same bank account that the interest and principal should be repaid to by the Borrower. To effectuate the disbursement of any Loan, a request for funding under the terms of this Agreement must be completed by the Borrower through the submission of a Notice of Drawdown, as included hereto in Exhibit A, to Lender.

The Lender holds its bank account at Canadian Imperial Bank of Commerce in Illinois, USA. *See more information below.*

The Borrower holds its accounts at JPMorgan Chase Bank in New York, USA. *See more information below.*

### **Lender**

*Any transfers from the Borrower to the Lender should be paid to the following account*:

**Bank Name**: CIBC Bank USA
**SWIFT**: PVTBUS44
**ABA**: 071006486
**Favor of ("F/O")**: Prudent Cayman Investment Funds Master SPC - North American Opportunity Master SP
**Account ("A/C")**: ████01

### **Borrower**

*Any transfers from the Lender to the Borrower should be paid to the following account*:

**Bank Name**: Chase
**SWIFT**: CHASUS33
**ABA**: 021000021
**Favor of ("F/O")**: Alliance Metals
**Account ("A/C")**: ████53

This bank account is hereinafter referred to as the "Borrower's Bank Account".



b) **Additional Considerations**:

The Parties hereto acknowledge and agree that any Loan made under this Agreement will be funded into the Borrower's Bank Account, or a the 'lock box' account controlled by the Lender, per Section 4(a) hereto. Thereafter, the funds will be forwarded from the Borrower's Bank Account to another, to be determined, bank account provided by the Borrower at the sole discretion of the Lender (the "Operational Account"). It is duly confirmed and accepted by the Parties that the Lender shall have access to, view, review and control operational and cash disbursement control of the Borrower's Bank Account and the Operational Accounts which Loan proceeds are released to.

If the Lender reasonably deems that there is any breach of the provisions provided herein, it is agreed that the Lender will notify the Borrower and the Borrower will have 1 (one) business day to either (i) explain the circumstances and provide evidence supporting such claims or (ii) cure the breach to the satisfaction of the Lender. If the Borrower does not comply with this provision, the Lender has the right to find the Borrower in default and call or withdraw the funds in Borrower's Bank Account and/or the Operational Account to the Lender's account.

The Borrower will irrevocably assign and pledge to the Lender the receivables referenced in the Pledge Addendum included herein. Please see the Pledge Addendum and Appendix I thereto governing the Borrower's irrevocable pledge of the subject collateral for a given Loan.

**Section 5 - Payment of the Loan**

a) **Interest Payment**: The payment of interest shall occur on a "Interest Payment Date, with such term defined as the date when the Borrower shall pay the Lender the Interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender as per the terms of this Loan Agreement, payable by the Borrower in either one or a combination of the following two ways:

    i. Upon Receipt of a Call Notice: The Borrower shall ensure each payment will take place within 72 hours after receiving a payment demand for the Interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document, or

    ii. Lender's Remittance from Borrower's Bank Account: The Lender may, in its sole discretion, release a payment in the amount of the interest amount due at any time from the Borrower's Bank Account to the bank account of the Lender.

b) **Principal Payment**: The payment of principal shall occur on a "Principal Payment Date", with such term defined as the date when the Borrower shall pay the Lender the Principal owed as per specific request at such time by the Lender. The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the Loan Agreement, as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to



repay any portion of the principal amount earlier then at the end of the Term. The Loan is fully repayable at the end of the Term unless the Lender gives the Borrower a written notice ten (10) days before the end of the Term of an extension to the Term, at the Lender's sole discretion. The Loan can then be renewed for a period to be agreed upon in writing, with the same terms and conditions as in this loan agreement.

Any principal advanced hereunder shall be payable by the Borrower in either one or a combination of the following two ways:

    i. Upon Receipt of a Call Notice: The Borrower should be informed ten (10) days prior of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document, or

    ii. Lender's Remittance from Borrower's Bank Account: The Lender may, in its sole discretion, release a payment in the amount of the Principal amount due at any time from the Borrower's Bank Account to the bank account of the Lender.

c)    All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

d)    The payment obligations assumed herein by the Borrower with respect to the repayment of Interest and Principal to the Lender, shall at all times be the most senior payment obligation of the Borrower, unless this is explicitly waived in writing by the Lender.

e)    In order to effectuate a request for repayment of any outstanding amounts under this Agreement, the Lender will cause to be delivered a Call Notice Request, as included hereto in Exhibit B, to the Borrower. The repayment of any amounts considered under the Call Notice Request shall be subject to the provisions contained within this Section.

**Section 6 - Duration**

This agreement shall enter into force on the date hereof (the "Execution Date") and is concluded for a fixed period ending at the 7-year anniversary of the Execution Date. The Agreement may be renewed from time to time by an extension of the Master Loan Agreement.

Each extension of the Master Loan Agreement shall be executed by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

**Section 7 – Representations and Warranties**

a)    Both of the Parties hereto represent and warrant to the other party as follows:

    (i)    Both parties have the full power and authority and have taken all action necessary to execute and deliver this Agreement and to fulfil their obligations hereunder, and to consummate the transactions contemplated by this Agreement;



(ii)    The making and performance of this Agreement and all documents executed and delivered and required to be executed and delivered hereunder do not and will not violate any law or regulation of the jurisdiction of its incorporation or any other law or regulation applicable to either of them;

(iii)    This Agreement has been duly executed and delivered by either party and constitutes their legal, valid and binding obligation, enforceable in accordance with its terms;

(iv)    All consents, licenses, approvals, authorizations, registrations (including filling this agreement with any required governmental agencies), filings, opinions and declarations from or with any agency, department, administrative authority, statutory corporation, or judicial entity necessary for the validity or enforceability of their respective obligations under this Agreement have been obtained and no governmental authorizations other than any already obtained are required in connection with the execution, delivery and performance of this Agreement.

b)    The Borrower further represents and warrants to the Lender that on and as of the Effective Date the Borrower is not aware of any defense to payment arising out of any act or omission of the Borrower, or any right of offset or counterclaim against the Borrower.

**Section 8 - Events of Default**

8.1

a) In the event:

(i)    The Borrower fails to pay any sum due from it hereunder at the time, in the currency and in the manner specified herein; or

(ii)    Any representation or statement made by the Borrower in this Agreement or any notice or other document, certificate, or statement delivered by it pursuant hereto or in connection herewith is or proves to have been incorrect or misleading when made; or

(iii)    The Borrower fails duly to perform or comply with any of the obligations expressed to be assumed by it in this Agreement; or

(iv)    The Borrower fails duly to perform or comply with any other obligation expressed to be assumed by them in this Agreement and such failure is not remedied within seven (7) business days after the Lender has given notice thereof to the Borrower; or

(v)    Any indebtedness of the Borrower is not paid when due, or any indebtedness is declared to be or otherwise becomes due and payable prior to its specified maturity or any creditor of the Borrower becomes entitled to declare any indebtedness due and payable to its specified maturity; or



    (vi)     The Borrower is unable to pay its debts as they fall due, commences negotiations with any one or more creditors with a view to the general readjustment or rescheduling of its indebtedness or makes a general assignment for the benefit of or a composition or arrangement with its creditors; or

    (vii)    The Borrower is declared bankrupt; or

    (viii)   The Borrower repudiates this Agreement or does or causes to be done any act or thing evidencing an intention to repudiate this Agreement.

b) Then, the Lender may:

    (i)     Declare the Loan to be immediately due and payable (where upon the same shall become so payable together with interest accrued due thereon), and/or

    (ii)    Declare that the Loan shall be cancelled, whereupon the same shall be cancelled.

8.2    If, pursuant to Section 8.1, the Lender declares the Loan to be due and payable on the demand of the Lender, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over equity investors, any other creditors, or any other member of the capital structure, in any future bankruptcy process in regards to realizing the repayment of the amounts owed to the Lender in accordance to the terms of this agreement.

**Section 9 – Pledge of Assets**

a)  The obligation of the Borrower to repay any Loan to the Lender under this Agreement shall be guaranteed by the pledge of any and all other assets held by the Borrower.

b)  The Borrower shall provide a specific security interest in a pool of receivables (the "Collateral Pool") which shall be pledged, free and clear of any incumbrances, to the benefit of Lender. If any advance rate concepts are decided to be employed hereunder, such advance rates shall be calculated as a percentage (%) of the face-value of the Collateral Pool and may be determined at the sole discretion of the Lender. However, this shall be communicated to the Borrower, in writing, prior to the release of any monies.

c)  The Borrower hereby undertakes and commits to executing the necessary registrations, signatures and actions within United States, as to make any and all such pledges fully valid and enforceable against the Borrower, upon request in writing by the Lender, within the timeframe required by the Lender in said written request.

d)  Please refer to the Pledge Addendum herein.



## Section 10 - Assignment

This Agreement shall bind and inure to the benefit of the respective successors of the Parties hereto, except that the Borrower may not assign or otherwise transfer all or any parts of its rights or obligations under this Agreement without the prior written consent of the Lender.

## Section 11 – Remedies and Waivers, Partial Invalidity

No failure to exercise, nor any delay in exercising, any right or remedy under this agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise thereof or the exercise of any other right or remedy. The rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

If, at any time, any provision of this agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions thereof, nor the legality, validity or enforceability of such provision under the law of any other jurisdiction, shall in any way be affected or impaired thereby.

## Section 12 – Taxes and other deductions

All sums payable by the Borrower under this Agreement shall be paid free and clear of taxes (except to the extent required by the law) without any deduction or withholding for or on account of any present or future tax duties, fees or charges of any nature now or hereafter imposed by the United States or any other country, any political subdivision or taxing authority thereof or any federation or organization.

## Section 13 - Counterparts

This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

## Section 14 - Applicable Law

This Agreement is exclusively subject to the laws of the Cayman Islands.

## Section 15 - Jurisdiction

Exclusive jurisdiction is given to the Courts of the state of Florida and any claims arising under the present Agreement must be submitted to the Date County.

## Section 16 – Notice

All notices, advice, statements, requests, demands and other communications ("**Notices**") under this Agreement shall be made in the English language and shall be given or made to the other Party in writing or- but then, except for routine notices, to be confirmed in writing - by email and shall be addressed to them at the addresses included in the Preamble.



**IN WITNESS WHEREOF** the Parties to this Agreement have caused this Agreement to be duly executed and signed, in as many original copies as there are Parties to this Agreement, each Party declaring having received one original copy.

**The Lender**

**Name**: Dennis Klemming
**Capacity**: Board Member

**By**:_____
**Date**:

**Name**: Giovanni Cataldi
**Capacity**: Board Member

**By**:_____
**Date**:

**The Borrower**

**Name**: Jacob Gitman
**Capacity**: President

**By**:_____
**Date**: 09. 11. 2018

**Name**: Larry Gitman
**Capacity**: Manager

**By**:_____
**Date**: 09. 11. 2018



## Exhibit A

## NOTICE OF DRAWDOWN

**Prudent Cayman Investment Funds Master SPC - North American Opportunity Master SP**
103 South Church Street, PO Box 10240,
KY1-1002, Grand Cayman,
Cayman Island

Attn.: Mr. Dennis Klemming

Ref: Notice of Drawdown under the Master Loan Agreement

Dear Sir,

1.  We refer to Section 4 of the Master Loan Agreement (the "Agreement"), executed by and between the Borrower and Lender on 11/14/2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a Loan to be effected under the terms of the Agreement, as follows:

| Beneficiary Bank: | Chase | | Amount: | |
|---|---|---|---|---|
| **ABA** | 267084131 | | **Currency:** | USD |
| **Beneficiary Bank Swift:** | CHASUS33 | | **Date of Drawdown:** | |
| **Beneficiary Name:** | Alliance Metals | | **MLA Maturity Date:** | 11/14/2025 |
| **Beneficiary Account Number:** | ▇53 | | **Interest:** | 17.00% p.a. |

3. This Loan shall be repaid in accordance with the terms of this Notice of Drawdown and the Agreement, and we hereby irrevocably confirm our interest in receiving such funds at your earliest convenience.

### The Lender

**Name**: Dennis Klemming                  **By**:_____

**Capacity**: Board Member                  **Date**:


**Name**: Giovanni Cataldi                  **By**:_____

**Capacity**: Board Member                  **Date**:





**The Borrower**

**Name**: Jacob Gitman

**Capacity**: President

By: _____

Date: 09. 11. 2018

**Name**: Larry Gitman

**Capacity**: Manager

By: _____

Date: 09. 11. 2018



**Exhibit B**

## CALL NOTICE REQUEST FORM

**TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS)**
1111 Kane Concourse, Bay Harbor Island, 33154
Florida, USA

Attn.: Mr. Jacob Gitman / Larry Gitman

Ref: <u>Notice of Repayment under the Master Loan Agreement:</u>

Dear Sirs,

1.  We refer to Section 5 of the Agreement, executed by and between executed by and between the Borrower and Lender on 11/14/2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2.  This is to formally request a REPAYMENT to be effected under the terms of the Agreement, as follows:

| | | | | |
|---|---|---|---|---|
| **Beneficiary Bank:** | CIBC Bank USA | | **Amount:** | |
| **Beneficiary Bank Swift:** | PVTBUS44 | | **Currency:** | |
| **Beneficiary Name:** | Prudent Cayman Investment Funds Master SPC - North American Opportunity Master | | **Date of Call Request:** | |
| **Beneficiary Account Number:** | ▓▓▓▓01 | | | |

3.  The repayment outlined herein shall be repaid in accordance with the terms of this Call Notice Request Form and the Agreement, and by singing hereunder, the Lender irrevocably confirm its interest in receiving such funds per the allotted time in this Agreement.

    **The Lender**

    **Name**: Dennis Klemming                    **By**:_____

    **Capacity**: Board Member                    **Date**:


    **Name**: Giovanni Cataldi                    **By**:_____

    **Capacity**: Board Member                    **Date**:



**Exhibit C**

## Pledge Addendum for MLA-NAO E1-091118 USD

*by and between*

### Technocon International Inc. (D/B/A Alliance Metals)

*and*

### Prudent Cayman Investment Funds Master SPC – North American Opportunity Master

As security for the obligations created under this Master Loan Agreement, Technocon International Inc (D/B/A Alliance Metals) (the "**Assignor**") hereby assigns and pledges to the Prudent Cayman Investment Funds Master – North American Opportunity Master (the "**Assignee**") all of the Assignor's rights, title and interest in the receivables outlined herein and all other proceeds remitted to the beneficiary account of such pledged receivables (jointly defined as "**Assigned Deposits**"), and grants to the Assignee, a security interest therein, and agrees that until satisfaction in full of all obligations, the Assignee shall have and possess the entire right, title and interest in and to the Assigned Deposits. Moreover, in the event the Assignee is not the beneficiary of certain receivables, Assignor gives authority to Assignee to have access to view, review and control operational and cash disbursement control of the Assignor's Assigned Deposits.

The Assignor agrees that the Assignee is hereby authorized to deduct directly from the Assigned Deposits all amounts due to the Assignee under this Pledge Addendum without any prior notice or any authorization from the Assignor.

The Assignee is hereby authorized, but not obligated, to file UCC financial statements and amendments thereto and continuation thereof, and any other related filings, in the name of the Assignor without any signature of Assignor to further evidence the Assignee's interest in the Assigned Deposits, to the extent deemed necessary or appropriate by Assignee. The parties agree that the Assignor shall at all times be deemed the first priority security interest holder of the correlative specific receivables as outlined in the Appendix included herein.

The Assignor surrenders all authority to withdraw, disburse or receive the benefits of the Assigned Deposits, unless otherwise stated in writing by the Assignee. This Pledge Addendum is irrevocable so long as any Obligations are outstanding and shall terminate only upon the Assignee's acknowledgement in writing that this Pledge Addendum has terminated.

Except as expressly provided elsewhere in this Pledge Addendum, all proceeds received by Assignor in respect of including, but not limited to, any insurance money collected from a third-party payor upon all or any part of the Assigned Deposits shall be applied in full or in part by the Assignee against, the amount obligated to pay in the following order of priority:

    **first**, to the amount received by Assignor from Assignee plus interest;
    **second**, to the extent of any excess of such proceeds, to the payment of all other money lent for the ratable benefit of the Assignee; and
    **third**, to the extent of any excess of such proceeds, to the payment to or upon the order of such Assignor or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.



**The Lender**

**Name**: Dennis Klemming              **By**:_____
**Capacity**: Board Member             **Date**:

**Name**: Giovanni Cataldi             **By**:_____
**Capacity**: Board Member             **Date**:

**The Borrower**

**Name**: Jacob Gitman                 **By**:_____
**Capacity**: President                **Date**: 09/11/2018

**Name**: Larry Gitman                 **By**:_____
**Capacity**: Manager                  **Date**: 09. 11. 2018



**Appendix I**

## **Exhibit 3**

**Clerk's Default**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA

ALLIANCE METALS LLC,

     Plaintiff,

v.

                             CASE NO.: 2024-006339-CA-01

C T CORPORATION SYSTEM, a Delaware
Corporation,

     Defendant.

_____/

## CLERK'S DEFAULT AGAINST DEFENDANT, C T CORPORATION SYSTEM

    A default is entered in this action against Defendant, C T CORPORATION SYSTEM,

for failure to serve or file any document as required by law.

Date:   MAY - 9 2024

                              By: _____
                              As Deputy Clerk

                            Filed by:
                            STOK KON + BRAVERMAN
                            *Attorneys for Plaintiff*
                            One East Broward Boulevard, Suite 915
                            Fort Lauderdale, FL 33301
                            service@stoklaw.com

                            By: */s/ Joshua R. Kon*
                            JOSHUA R. KON, ESQ.
                            Florida Bar No. 56147
                            (jkon@stoklaw.com)

## Exhibit 4

**Motion for Default Judgment**

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ALLIANCE METALS LLC,

     Plaintiff,

v.

CASE NO.: 2024-006339-CA-01

C T CORPORATION SYSTEM, a Delaware Corporation,

     Defendant.

_____/

### <u>MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANT, C T CORPORATION SYSTEM</u>

Plaintiff, ALLIANCE METALS LLC ("Plaintiff"), by and through undersigned counsel and pursuant to Florida Rule of Civil Procedure 1.500(e), moves this Court to enter a Final Default Judgment against Defendant, C T CORPORATION SYSTEM ("CT"). In support of this Motion Plaintiff states as follows:

1.     Plaintiff properly served CT through its registered agent with the Complaint on April 12, 2024. See, Return of Service attached as Exhibit **"A."**

2.     In the Complaint, the Plaintiff alleges that: (i) the UCC-1 filing statement #202301281322 was filed by Defendant in the Florida Secured Transaction Registry ("Filing Statement") purporting to be a lien on assets; (ii) that no agreement ever existed between Plaintiff, and Defendant or any related entity which pledged Alliance's assets to any party; and (iii) that, therefore, the Filing Statement is false, fictitious, and fraudulent causing the Plaintiff financial injury, by purporting to be a lien on and clouding the title of Alliance's assets.

3.     Plaintiff's claim in Counts I and II of its Complaint arise under Florida's Declaratory Judgment Act and Fla. Stat. § 817.535, which provides in subsection 2(A) that: "[a] person who

files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."  In turn, subsection (8)(a) provides that "[a]ny person adversely affected by an instrument filed in the official record which contains a materially false, fictitious, or fraudulent statement or representation has a civil cause of action under this section without regard to whether criminal charges are pursued under subsection (2).

4.      On May 9, 2024, the Clerk entered a Default against CT. *See,* Default attached as Exhibit **"B."**

5.      Pursuant to Fla. R. Civ. P. 1.500(e), a final judgment after default may be entered by the court at any time. Fla. R. Civ. P. 1.500(e). Based on the entered Clerk's Default, "[t]he entry of a default cuts off the defendant's right to defend the action, except for the defendant's ability to contest the amount of unliquidated damages. *See McMullen v. HSBC Bank USA, Nat'l Ass'n*, 149 So. 3d 156, 157 (Fla. 1st DCA 2014). Further, "the defaulting defendant admits to liability…." *See*, *Maiuri v. First Am. Title Ins. Co.*, 356, So. 3d 276, 278 (Fla. 3d DCA 2023).

6.      By virtue of CT's default, CT has admitted that no agreement ever existed between Alliance and the Defendant or any related entity that pledged Alliance's assets to any party, the Filing Statement contains materially false, fictitious, or fraudulent statements or representations that purport to affect Alliance's interest in its property, causing financial injury to Plaintiff by purporting to be a lien on and clouding the title of Alliance's assets. Thus, the Filing Statement is null and void in its entirety as a result.

7.      As such, "[u]pon a finding that the instrument contains a materially false, fictitious, or fraudulent statement or representation such that the instrument does not establish a legitimate property or lien interest in favor of another person," and upon the court finding "the instrument void

in its entirety, it may order the instrument sealed from the official record and removed from any electronic database used for indexing or locating instruments in the official record." § 817.535(8) (a)-(b).

8.      Accordingly, the Plaintiff is entitled to the entry of a final default judgment against CT, finding that the UCC Financing Statement, #202301281322, is null and void *ab initio*, invalid without any legal effect whatsoever, and for the Court to direct the Florida Secretary of State that the UCC-1 filing statement #202301281322 be sealed from the official record of the Florida Secured Transaction Registry and removed from any database used to index or locate documents in the official record of the Florida Secured Transaction Registry .

9.      A Proposed Order granting entry of Final Default Judgment is attached to this Motion as Exhibit C. *See,* Proposed Order granting entry of Final Default Judgment attached as Exhibit **"C."**

WHEREFORE, Plaintiff, ALLIANCE METALS LLC, respectfully requests entry of an Order of Final Default Judgment against the Defendant, C T CORPORATION SYSTEM, (a) declaring that the UCC-1 filing statement #202301281322 is null and void *ab initio*, and invalid without any legal effect whatsoever and ordering the Florida Secretary of State that the UCC-1 filing statement #202301281322 be sealed from the official record and removed from any database used to index or locate documents in the official record; (b) awarding attorney's fees under Fla. Stat. 817.535(8)(c); (c) reserving jurisdiction to enters orders enforcing the order, to adjudicate any claims under subsection 8(b)(2), for any claims of fees and costs, and for any claims under Florida's Declaratory Judgment Act for further, supplementary, or ancillary relief; and (d) awarding all such other relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the Florida Courts E-Filing Portal on this May 22, 2024.

Dated: May 22, 2024

Respectfully submitted,

STOK KON + BRAVERMAN
*Attorneys for Alliance Metals, LLC.*
1 East Broward Boulevard, Suite 915
Fort Lauderdale, FL 33301
Email: service@stoklaw.com

By:  */s/ Joshua R. Kon*

JOSHUA R. KON, ESQ.
Florida Bar No. 56147
(jkon@stoklaw.com)
YOSEF Y KUDAN, ESQ.
Florida Bar No. 1010261
(ykudan@stoklaw.com)
MITCHELL J. COHEN, ESQ.
Florida Bar No. 1048683
(mcohen@stoklaw.com)

# EXHIBIT A

## RETURN OF SERVICE

**State of Florida**              **County of Miami-Dade**              **Circiut Court**

Case Number: 2024-006339-CA-01

Plaintiff:
**ALLIANCE METALS LLC**

vs.

Defendant:
**C T CORPORATION SYSTEM, a Delaware Corporation**

For:
Joshua Kon
Stok Kon & Braverman
1 East Broward Blvd
Suite 915
Ft Lauderdale, FL 33301

Received by L & L Process, LLC. on the 11th day of April, 2024 at 1:48 pm to be served on **CT CORPORATION SYSTEM REGISTERED AGENT: THE CORPORATION COMPANY, 1200 S PINE ISLAND RD, PLANTATION, FL 33324**.

I, Ira E Smith, do hereby affirm that on the **12th day of April, 2024** at **2:20 pm, I:**

served a **CORPORATION** by delivering a true copy of the **Summons and Complaint** with the date and hour of service endorsed thereon by me, to: **LISA HOWARD** as **INTAKE SPECIALIST** for **CT CORPORATION SYSTEM**, at the address of: **1200 S PINE ISLAND RD, PLANTATION, FL 33324**, and informed said person of the contents therein, in compliance with state statutes.

**Description** of Person Served: Age: 50, Sex: F, Race/Skin Color: WHITE, Height: 5'8", Weight: 140, Hair: BLACK, Glasses: N

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served. Under penalty of perjury, I declare that I have read the foregoing documents, and that the facts stated in it are true. NO NOTARY REQUIRED PURSUANT TO F.S.92.525(2)

**Ira E Smith**
Process Server 1569

**L & L Process, LLC.**
**13876 SW 56 Street**
**Suite 200**
**Miami, FL 33175**
**(305) 772-8804**

Our Job Serial Number: LLP-2024001510

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V8.2n

# EXHIBIT B

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR      MIAMI-DADE      COUNTY,
FLORIDA

ALLIANCE METALS LLC,

      Plaintiff,

CASE NO.: 2024-006339-CA-01

v.

C  T  CORPORATION  SYSTEM,  a  Delaware
Corporation,

      Defendant.

_____/

## CLERK'S DEFAULT AGAINST DEFENDANT, C T CORPORATION SYSTEM

    A default is entered in this action against Defendant, C T CORPORATION SYSTEM,

for failure to serve or file any document as required by law.

Date:   MAY – 9 2024

                      By: _____
                      As Deputy Clerk

                      Filed by:
                      STOK KON + BRAVERMAN
                      *Attorneys for Plaintiff*
                      One East Broward Boulevard, Suite 915
                      Fort Lauderdale, FL 33301
                      service@stoklaw.com

                      By: */s/ Joshua R. Kon*
                      JOSHUA R. KON, ESQ.
                      Florida Bar No. 56147
                      (jkon@stoklaw.com)

# EXHIBIT C

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR      MIAMI-DADE      COUNTY,
FLORIDA

ALLIANCE METALS LLC,

     Plaintiff,

CASE NO.: 2024-006339-CA-01

v.

C T CORPORATION SYSTEM, a Delaware
Corporation,

     Defendant.

_____/

## PROPOSED ORDER ON PLAINTIFF'S MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANT, C T CORPORATION SYSTEM

THIS CAUSE having come before the Court for hearing on _____, on the Plaintiff's Motion for Final Default Judgment Against Defendant, C T CORPORATION SYSTEM ("Defendant"), the Court having reviewed the Motion, having heard argument from counsel for Plaintiff, and being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED:**

1.    That the Motion for Final Default Judgment is **GRANTED**.

2.    On May 9, 2024, a default was entered admitting the facts pled in the Complaint, including (i) that the UCC-1 filing statement #202301281322 was filed by Defendant in the Florida Secured Transaction Registry ("Filing Statement") purporting to be a lien on assets; (ii) that no agreement ever existed between Plaintiff, Alliance Metals, LLC ("Plaintiff" or "Alliance") and Defendant or any related entity which pledged Alliance's assets to any party; and (iii) that, therefore, the Filing Statement is false, fictitious, and fraudulent causing the Plaintiff financial injury, by purporting to be a lien on and clouding the title of Alliance's assets.

3.    Plaintiff's claim in Counts I and II of its Complaint arise under Florida's Declaratory Judgment Act and Fla. Stat. § 817.535, which provides in subsection 2(A) that: "[a] person who files or directs a filer to file, with the intent to defraud or harass another, any instrument containing a materially false, fictitious, or fraudulent statement or representation that purports to affect an owner's interest in the property described in the instrument commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." In turn, subsection (8)(a) provides that "[a]ny person adversely affected by an instrument filed in the official record which contains a

materially false, fictitious, or fraudulent statement or representation has a civil cause of action under this section without regard to whether criminal charges are pursued under subsection (2).

4. Accordingly, the Court finds that because no agreement ever existed between Alliance and the Defendant or any related entity that pledged Alliance's assets to any party, the Filing Statement contains materially false, fictitious, or fraudulent statements or representations that purport to affect Alliance's interest in its property, causing financial injury to Plaintiff by purporting to be a lien on and clouding the title of Alliance's assets. The Filing Statement is null and void in its entirety as a result.  As such, "[u]pon a finding that the instrument contains a materially false, fictitious, or fraudulent statement or representation such that the instrument does not establish a legitimate property or lien interest in favor of another person," and upon the court finding "the instrument void in its entirety, it may order the instrument sealed from the official record and removed from any electronic database used for indexing or locating instruments in the official record." § 817.535(8)(a)-(b).

5. Based on the foregoing findings of fact and law, the Florida Secretary of State is directed that the UCC-1 filing statement #202301281322 be sealed from the official record of the Florida Secured Transaction Registry and removed from any database used to index or locate documents in the official record of the Florida Secured Transaction Registry.

6. This Court reserves jurisdiction to enters orders enforcing this order, to adjudicate any claims under subsection 8(b)(2), for any claims of fees and costs, and for any claims under Florida's Declaratory Judgment Act for further, supplementary, or ancillary relief.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida on ____ day of _____, 2024.

_____
HONORABLE CHARLES
JOHNSON CIRCUIT COURT
JUDGE

CC:

Joshua R. Kon, Email: jkon@stoklaw.com
Yosef Y. Kudan, Email: ykudan@stoklaw.com
Mitchell J. Cohen, Email: mcohen@stoklaw.com

## Exhibit 5

**Motion to Intervene**

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

ALLIANCE METALS LLC,

      Plaintiff,

v.                                                                          Case No. 2024-006339-CA-01
                                                    Section: CA06

C T CORPORATION SYSTEM, a Delaware
Corporation,

      Defendant.

_____/

### MOTION TO INTERVENE

      Comes now Mitchell Mansfield and Samuel Cole, in their capacity as Joint Official Liquidators (the "**JOLs**") of Cayman Investment Funds Master SPC (In Official Liquidation) (the "**Master Fund**") and Cayman Investment Funds SPC (In Official Liquidation) (the "**Feeder Fund**" and with the Master Fund, the "**Funds**")), Movants herein, and respectfully represent the following:

      1.      The JOLs have been appointed to liquidate the Funds, which are segregated portfolio companies established under Cayman Islands' law, each with two active segregated portfolios. Copies of the Cayman Court Orders appointing the JOLs are attached to this Motion as **Exhibit A**.

      2.      The Master Fund, on behalf of one of its active segregated portfolios, the North American Opportunity Master SP (the "**NAO Master SP**") entered into a Master Loan Agreement with Technocon International Inc. (D/B/A Alliance Metals)[1] ("**Technocon**") on or about September 11, 2018, and, in section two of that agreement, agreed to lend an aggregate of $20 million to Technocon to be made available in one or multiple transfers (the "**Facility**

---

[1] Technocon is described in the Facility Agreement as "Technocon International Inc. (D/B/A Alliance Metals)".

**Agreement**"). It is the JOLs' understanding that the loans made by the NAO Master SP pursuant to terms of the Facility Agreement were advanced to Alliance Metals LLC ("**Alliance Metals**"), a subsidiary of Technocon and an operating metal works business. In the Facility Agreement, Technocon pledged "any and all other assets" to secure its obligations owing to the NAO Master SP under the Facility Agreement. *See* Facility Agmt., § 9. This pledge included all of the "rights, title and interests" in defined Assigned Deposits as further explained in an attached Pledge Addendum. *Id.*, Ex. C. In the Facility Agreement (Section 9(c)) and in the Pledge Addendum, Technocon agreed to execute necessary documents to make all pledges fully valid and enforceable and further agreed that the Master Fund, on behalf of the NAO Master SP, could "file UCC financial statements and amendments thereto and continuances thereof." A copy of the Facility Agreement is attached to this Motion as **Exhibit B**.

3.        The JOLs' investigation has revealed that the Master Fund, on behalf of the NAO Master SP, used the services of the Defendant in this action, C T Corporation System, to file UCC-1s in Florida to provide notice of its security interest in Technocon's assets. The UCC-1 filing statement #202301281322 attached to the Complaint (and that Plaintiff seeks to have declared void), states that the Defendant is acting "as representative." Compl., Ex. A. Thus, the Master Fund, on behalf of NAO Master SP, and as lenders under the Facility Agreement are the real parties in interest and C T Corporation System has no economic stake in this litigation.

4.        The Plaintiff contends in the Complaint that an "entity related to Alliance entered into" the Facility Agreement and that "no document allowed the Defendant, or any other entity, to assert claims over Alliance's assets or over the related entity's subsidiaries." Compl., ¶ 8. The Plaintiff further contends that there is no agreement that "ever existed between Alliance and any related entity that pledged all Alliance's assets to anyone." *Id.*, ¶ 11. Based on these allegations,

Plaintiff asked that the Court order that the UCC-1 be removed from the relevant databases and sealed and declare that the UCC-1 is void *ab inititio*.

5.      This    statement    contradicts    Alliance    Metals'    acknowledgement    of NAO Master SP's security interest as reflected in an Intercreditor Agreement, dated November 9, 2023, in which the parties to the Intercreditor Agreement acknowledged the UCC-1 with filing number 202301281322 (*e.g.*, the same UCC-1 challenged in the Complaint).   While the JOLs contend that the Intercreditor Agreement is not binding to subordinate its lien as it was signed by the individual displaced by the JOLs, and thus lacking authority to sign the Intercreditor Agreement for the Master Fund, on behalf of the NAO Master SP, it shows that Alliance Metals recognized the validity of the UCC-1.   A copy of the Intercreditor Agreement is attached to this Motion as **Exhibit C**.

6.      The Plaintiff nonetheless challenges the rights granted to the Master Fund on behalf of the NAO Master SP in the Facility Agreement and perfected by the filing of the UCC-1 but failed to name it as a defendant or consent to its written request to intervene.[2]   The Movants thus seek to intervene to first move to vacate the Clerk's Default Judgment as improvidently granted under Florida Rule of Civil Procedure 1.500 and otherwise protect the Master Fund's legal rights jeopardized by this lawsuit.

7.      Florida Rule of Civil Procedure 1.230 provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding, unless otherwise ordered by the court in its discretion."  Fla. R. Civ. P. 1.230.  The

---

[2]      Movants wrote to Plaintiff's counsel in this action on May 12, 2024, requesting that it withdraw the Default Judgment and name the Movants as defendants in this action.  *See* **Exhibit D**.  Plaintiff's counsel responded by email to this letter and disputed the Movants' positions and rights to intervene.

JOLs, acting on behalf of the Master Fund, contend that under the Facility Agreement, the Master

Fund, on behalf of NAO Master SP, has a direct, economic interest in this litigation because if the

UCC-1 is declared void and removed from the State of Florida's UCC register, Alliance Metals

will be entitled to pledge the assets previously pledged to the Master Fund to another lender in

violation of the Facility Agreement and causing a direct harm to the Master Fund's creditors and

investors.

8.    Based on the foregoing, the Master Fund should be permitted to intervene in this

action as a party-Defendant.

**WHEREFORE**, Movants respectfully request permission to intervene in this action.

Dated: June 4, 2024                    Respectfully submitted,

                                       **DLA PIPER LLP (US)**

                                       By:  _/s/  Ardith Bronson_____
                                            Ardith Bronson (FBN 423025)
                                            Rachel Nanes (FBN 85167)
                                            Nicole McLemore (FBN 1010885)
                                            200 South Biscayne Blvd., Suite 2500
                                            Miami, Florida 33131
                                            Telephone: (305) 423-8562
                                            Facsimile: (305) 437-8131
                                            Email:  ardith.bronson@us.dlapiper.com
                                                    rachel.nanes@us.dlapiper.com
                                                    nicole.mclemore@us.dlapiper.com
                                            - and -

                                            R. Craig Martin (*pro hac vice* motion pending)
                                            DLA PIPER LLP (US)
                                            1201 North Market St., 21st Floor
                                            Wilmington, Delaware 19801
                                            Telephone: (302) 468-5700
                                            Facsimile: (302) 778-7834
                                            Email:  craig.martin@us.dlapiper.com

                                            *Counsel for Mitchell Mansfield and Samuel Cole,*
                                            *as Joint Official Liquidators of Cayman*
                                            *Investment Funds Master SPC (In Official*
                                            *Liquidation) and Cayman Investment Funds SPC*
                                            *(In Official Liquidation)*

## CERTIFICATE OF CONFERRAL

I hereby certify that counsel for Mitchell Mansfield and Samuel Cole, as Joint Official Liquidators of Cayman Investment Funds Master SPC (In Official Liquidation) and Cayman Investment Funds SPC (In Official Liquidation) attempted to confer with counsel for Plaintiff Alliance Metals, LLC on multiple occasions in a good faith effort to obtain Plaintiff's position on this Motion.  Plaintiff's counsel indicated that Plaintiff will review the motion before asserting a position.

**DLA PIPER LLP (US)**

By:  /s/  Ardith Bronson
  Ardith Bronson (FBN 423025)
  Rachel Nanes (FBN 85167)
  Nicole McLemore (FBN 1010885)
  200 South Biscayne Blvd., Suite 2500
  Miami, Florida 33131
  Telephone: (305) 423-8562
  Facsimile: (305) 437-8131
  Email:  ardith.bronson@us.dlapiper.com
    rachel.nanes@us.dlapiper.com
    nicole.mclemore@us.dlapiper.com

*Counsel for Mitchell Mansfield and Samuel Cole, as Joint Official Liquidators of Cayman Investment Funds Master SPC (In Official Liquidation) and Cayman Investment Funds SPC (In Official Liquidation)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2024, I electronically filed the foregoing motion with the Florida Courts E-Filing Portal, which will serve the foregoing notice via electronic mail to all counsel of record.

**DLA PIPER LLP (US)**

By: */s/  Ardith Bronson*
    Ardith Bronson (FBN 423025)
    Rachel Nanes (FBN 85167)
    Nicole McLemore (FBN 1010885)
    200 South Biscayne Blvd., Suite 2500
    Miami, Florida 33131
    Telephone: (305) 423-8562
    Facsimile: (305) 437-8131
    Email:  ardith.bronson@us.dlapiper.com
          rachel.nanes@us.dlapiper.com
          nicole.mclemore@us.dlapiper.com

*Counsel for Mitchell Mansfield and Samuel Cole, as Joint Official Liquidators of Cayman Investment Funds Master SPC (In Official Liquidation) and Cayman Investment Funds SPC (In Official Liquidation)*

## Exhibit A

**Cayman Court Orders**



Digitally signed by Advance Performance Inspection Inc
Date: 2024.01.05 11 09.21 -05:00
Reason: Apex Certified
Location: Apex

Certified to be a true and correct copy
of the original
Dated this 3ʳᵈ day of June    2024

Karen Armstrong
Notary Public in and for the Cayman Islands
My commission expires January 31ˢᵗ, 20 25

IN THE GRAND COURT OF THE CAYMAN ISLANDS

FINANCIAL SERVICES DIVISION

FSD CAUSE NO: 340 OF 2023 (RPJ)

IN THE MATTER OF SECTIONS 124 AND 131 OF THE COMPANIES ACT (2023 REVISION)

AND IN THE MATTER OF CAYMAN INVESTMENT FUNDS MASTER SPC (IN VOLUNTARY LIQUIDATION)

THE HONOURABLE MR JUSTICE RAJ PARKER
IN CHAMBERS
4 JANUARY 2024

———————————————

**SUPERVISION ORDER**

———————————————

**UPON** the application of Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands as Joint Voluntary Liquidators (**JVLs**) of Cayman Investment Funds Master SPC (in voluntary liquidation) (**Company**) by the JVLs' Petition dated 20 November 2023 for an order that the liquidation of the Company continue under the supervision of the Court.

**AND UPON** the Court being satisfied that the application may be determined on the papers without an oral hearing.

**AND UPON** reading the verifying affirmations of Samuel Cole dated 20 November 2023 and Mitchell Mansfield dated 14 December 2023 and the exhibits exhibited thereto.

**AND UPON** reading the written submissions filed by counsel for the JVLs.

**AND UPON** the Court being satisfied that the JVLs are qualified insolvency practitioners in terms of section 89 of the Companies Act (2023 Revision) (**Companies Act**) and as prescribed by regulation 4 of the Insolvency Practitioners Regulations (2023 Consolidation).

**IT IS ORDERED THAT:**

1.      The liquidation of the Company be continued under the supervision of the Court.

2.      Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands, be appointed as Joint Official Liquidators (**JOLs**) of the Company with the power to act jointly and severally.

3.      The JOLs are not required to provide security for their appointment.

4.      The JOLs are authorised to take any action they consider necessary or desirable in connection with the liquidation and the winding up of affairs in the Cayman Islands or elsewhere of the Company and its segregated portfolios: North America Opportunity Master SP, Diversified Corporate Lending Master SP, Payment Processing Master SP, Mezzanine Master SP and any other segregated portfolio of the Company (**Segregated Portfolios**).

5.      The JOLs are sanctioned to exercise the following powers outlined in Part One of the Third Schedule of the Companies Act without further order of the Court:

(a)      The power to bring or defend any action or other legal proceeding in the name and on behalf of the Company.

(b)      The power to make a compromise or an arrangement with creditors or persons claiming to be creditors or who have or allege the existence of a claim against the Company, whether present or future, actual or contingent, or ascertained or not.

(c)      The power to compromise calls and liabilities for calls, debts, and liabilities capable of resulting in debts and claims, present or future, actual or contingent, or ascertained or not, subsisting or supposed to subsist between the Company and any person and all questions relating to or affecting the assets or the liquidation of the Company, on such terms as may be agreed, and take security for the discharge of any such call, debt, liability, or claim, and give a complete discharge.

(d)      The power to sell or otherwise dispose of the property of the Company and its Segregated Portfolios.

(e)     The power to engage staff (whether or not as employees of the Company) to assist the JOLs in the performance of their functions.

(f)     The power to engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions, within and outside of the Cayman Islands, and on such terms as the JOLs think fit, and to remunerate them out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

6.     The JOLs are additionally empowered to exercise the following powers without further order of the Court:

(a)     The JOLs are authorised to take any action as may be necessary or desirable to obtain recognition of the official liquidation and their appointment as JOLs in the United States of America or any other relevant jurisdiction, together with such other relief as the JOLs deem necessary for the proper exercise of their functions in that jurisdiction.

(b)     The power to control and otherwise deal with all existing bank accounts in the name of the Company and its Segregated Portfolios and to open new bank accounts in the name of the Company.

(c)     The power to appoint an agent to do anything the JOLs cannot do.

(d)     The power to change the registered office of the Company.

7.     The JOLs may exercise the powers granted to them within and outside of the Cayman Islands.

8.     No suit, action or other proceeding may be proceeded with or commenced against the Company except with the leave of the Court and subject to such terms as the Court may impose.

9.     No disposition of the Company or its Segregated Portfolio's property by, or with the authority of, the JOLs in carrying out their functions and exercising their powers under this Order shall be voided under s 99 of the Companies Act.

10.     The JOLs are at liberty to apply generally.

11.     JVLs' costs and expenses of this Petition shall be paid out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

12. The hearing of the Petition and Summons for Directions dated 20 November 2023 set down for 21 February 2024 at 9 am is vacated with appearances excused.

**DATED** the 4th day of January 2024

**FILED** the 5th day of January 2024

_____

**THE HONOURABLE MR JUSTICE RAJ PARKER**
**JUDGE OF THE GRAND COURT**

**THIS ORDER** was issued by Dentons, attorneys for the JVLs, whose address for service is Dentons, Floor Two, One Capital Place, Shedden Road, P.O. Box 10190, Grand Cayman KY1-1002 Cayman Islands.

Digitally signed by Advance Performance Exponent Inc.
Date: 2024.01.05 11:09:00 -05:00
Reason: Apex Certified
Location: Apex



Certified to be a true and correct copy
of the original
Dated this 3ʳᵈ day of June 2024.

Karen Armstrong
Notary Public in and for the Cayman Islands
My commission expires January 31ˢᵗ, 2025.

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**FSD CAUSE NO: 341 OF 2023 (RPJ)**

**IN THE MATTER OF SECTIONS 124 AND 131 OF THE COMPANIES ACT (2023 REVISION)**

**AND IN THE MATTER OF CAYMAN INVESTMENT FUNDS SPC (IN VOLUNTARY LIQUIDATION)**

**THE HONOURABLE MR JUSTICE RAJ PARKER**
**IN CHAMBERS**
**4 JANUARY 2024**

---

### SUPERVISION ORDER

---

**UPON** the application of Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands as Joint Voluntary Liquidators (**JVLs**) of Cayman Investment Funds SPC (in voluntary liquidation) (**Company**) by the JVLs' Petition dated 20 November 2023 for an order that the liquidation of the Company continue under the supervision of the Court.

**AND UPON** the Court being satisfied that the application may be determined on the papers without an oral hearing.

**AND UPON** reading the verifying affirmations of Samuel Cole dated 20 November 2023 and Mitchell Mansfield dated 14 December 2023 and the exhibits exhibited thereto.

**AND UPON** reading the written submissions filed by counsel for the JVLs.



**AND UPON** the Court being satisfied that the JVLs are qualified insolvency practitioners in terms of section 89 of the Companies Act (2023 Revision) (**Companies Act**) and as prescribed by regulation 4 of the Insolvency Practitioners Regulations (2023 Consolidation).

**IT IS ORDERED THAT:**

1. The liquidation of the Company be continued under the supervision of the Court.

2. Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands, be appointed as Joint Official Liquidators (**JOLs**) of the Company with the power to act jointly and severally.

3. The JOLs are not required to provide security for their appointment.

4. The JOLs are authorised to take any action they consider necessary or desirable in connection with the liquidation and winding up of affairs in the Cayman Islands or elsewhere of the Company and its segregated portfolios: North America Opportunity SP, Diversified Corporate Lending SP, Payment Processing SP, Mezzanine SP and any other segregated portfolio of the Company (**Segregated Portfolios**).

5. The JOLs are sanctioned to exercise the following powers outlined in Part One of the Third Schedule of the Companies Act without further order of the Court:

    (a) The power to bring or defend any action or other legal proceeding in the name and on behalf of the Company.

    (b) The power to make a compromise or an arrangement with creditors or persons claiming to be creditors or who have or allege the existence of a claim against the Company, whether present or future, actual or contingent, or ascertained or not.

    (c) The power to compromise calls and liabilities for calls, debts, and liabilities capable of resulting in debts and claims, present or future, actual or contingent, or ascertained or not, subsisting or supposed to subsist between the Company and any person and all questions relating to or affecting the assets or the liquidation of the Company, on such terms as may be agreed, and take security for the discharge of any such call, debt, liability, or claim, and give a complete discharge.

    (d) The power to sell or otherwise dispose of the property of the Company and its Segregated Portfolios.



(e)    The power to engage staff (whether or not as employees of the Company) to assist the JOLs in the performance of their functions.

(f)    The power to engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions, within and outside of the Cayman Islands, and on such terms as the JOLs think fit, and to remunerate them out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

6.    The JOLs are additionally empowered to exercise the following powers without further order of the Court:

(a)    The JOLs are authorised to take any action as may be necessary or desirable to obtain recognition of the official liquidation and their appointment as JOLs in the United States of America or any other relevant jurisdiction, together with such other relief as the JOLs deem necessary for the proper exercise of their functions in that jurisdiction.

(b)    The power to control and otherwise deal with all existing bank accounts in the name of the Company and its Segregated Portfolios and to open new bank accounts in the name of the Company.

(c)    The power to appoint an agent to do anything the JOLs cannot do.

(d)    The power to change the registered office of the Company.

7.    The JOLs may exercise the powers granted to them within and outside of the Cayman Islands.

8.    No suit, action or other proceeding may be proceeded with or commenced against the Company except with the leave of the Court and subject to such terms as the Court may impose.

9.    No disposition of the Company or its Segregated Portfolio's property by, or with the authority of, the JOLs in carrying out their functions and exercising their powers under this Order shall be voided under s 99 of the Companies Act.

10.    The JOLs are at liberty to apply generally.

11.    JVLs' costs and expenses of this Petition shall be paid out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

12.     The hearing of the Petition and Summons for Directions dated 20 November 2023 set down for 21 February 2024 at 9 am is vacated with appearances excused.

13.     This proceeding is to be treated as consolidated with *In the matter of Cayman Investment Funds Master SPC* (FSD Cause No 340 of 2023) for the purposes of assessing fees payable under the Court Fees Rules (2021 Revision) (**Court Fees Rules**), and the filing fee paid in respect of the Petition in this proceeding is to be refunded to the JVLs pursuant to s 6(5) of the Court Fees Rules.

**DATED** the 4th day of January 2024

**FILED** the 5th day of January 2024

**THE HONOURABLE MR JUSTICE RAJ PARKER**
**JUDGE OF THE GRAND COURT**

**THIS ORDER** was issued by Dentons, attorneys for the JVLs, whose address for service is Dentons, Floor Two, One Capital Place, Shedden Road, P.O. Box 10190, Grand Cayman KY1-1002 Cayman Islands.

**<u>Exhibit B</u>**

**Facility Agreement**



# MASTER LOAN AGREEMENT

## MLA - NAO E1-091118 USD

### PREAMBLE

**THE MASTER LOAN AGREEMENT** with the following number and identification code NAO E1-091118 USD between PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER SP and TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS) and regulates the terms and conditions outlined below by and between:

(A)   On one hand: PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER, with registered office at 103 South Church Street, PO Box 10240, KY1-1002, Grand Cayman, Cayman Island, represented by its Investment Manager and Directors, hereafter referred to as the "LENDER",

(B)   On the other hand: TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS), headquartered at 1111 Kane Concourse, 518 Bay Harbor Island, 33154 Florida, USA with the following FEI Number: 65-0542741 and Florida Document Number of P94000091060, hereafter referred to as "BORROWER".

**WHEREAS** the Lender and the Borrower have agreed that the Lender will finance the transactions in loan receivables or other financing instruments or any profit participation arrangement directly or indirectly executed by the Borrower in the aggregate amount specified in Section 2 pursuant to the terms and conditions of this Agreement. The Lender has the right to send any partial amount at any time convenient for the Lender to the account of the Borrower;

**WHEREAS** in consideration for this Loan, the Borrower will ensure the delivery to the Lender of unencumbered, fully perfected, third party security interests in accordance with the provisions of Section 9 of this Agreement;

The Lender and the Borrower are hereinafter referred to together as the "Parties" and each individually as a "Party".



**NOW THEREFORE,** the parties hereto agree as follows:

## Section 1 – Definitions

Wherever used in this Agreement, the terms below shall have the following meanings;

a)   **"Confidential Information"** means any information that the Borrower has furnished or will furnish to the Lender according to this Agreement, but does not include any such information that is or becomes generally available to the public (other than as a result of a breach by the Lender of its obligation hereunder) or that is or becomes available to the Lender from a source other than the Borrower;

b)   **"Effective Date"** is when the money is received by the borrower;

c)   **"USD"** shall mean the lawful currency of the United States of America;

d)   **"Loan" or "Master Loan Agreement"** shall have the meaning ascribed to it in Section 2 hereof;

e)   **"Payment Date"** means any day and date between date of signing this document until the loan is fully repaid after the Effective Date upon which the Loan (together with accrued interest) shall have been repaid in full by the Borrower;

f)   **"Term"** means the seven (7) year anniversary of the date which this contract is executed;

g)   **"Extensions and rollover of the Master Loan Agreement"** means the express renewal of the Master Loan Agreement for an additional period as of the penultimate date of the Term by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

Words importing the singular include the plural and vice versa and the neutral gender shall include the feminine and masculine genders.

## Section 2 - Agreement for the Loan

Subject to the terms and conditions of this Agreement the Lender agrees to provide financing to the Borrower and the Borrower agrees to become the debtor of the Lender, for an aggregate amount of USD twenty million dollars (USD 20,000,000). This amount can be made available by the Lender to the Borrower in one or multiple transfers to either of the accounts indicated in this Master Loan Agreement, at the sole discretion of the Lender.



## Section 3 - Interest Rate

Any amount received under the Master Loan Agreement shall bear annual interest in USD of seventeen percentage points (17.0%) until the Loan is either repaid, withdrawn or extended by the respective Parties prior to such date. For the sake of clarity, this Interest Rate shall be calculated as a simple annual interest rate calculated over a 360-day annual year basis.

## Section 4 - Disbursement of the Loan and Banking Details

a) **General Overview**:

Disbursement of each Loan under the Master Loan Agreement will be executed by the Lender from the same bank account that the interest and principal should be repaid to by the Borrower. To effectuate the disbursement of any Loan, a request for funding under the terms of this Agreement must be completed by the Borrower through the submission of a Notice of Drawdown, as included hereto in Exhibit A, to Lender.

The Lender holds its bank account at Canadian Imperial Bank of Commerce in Illinois, USA. *See more information below.*

The Borrower holds its accounts at JPMorgan Chase Bank in New York, USA. *See more information below.*

**Lender**

*Any transfers from the Borrower to the Lender should be paid to the following account*:

**Bank Name**: CIBC Bank USA
**SWIFT**: PVTBUS44
**ABA**: 071006486
**Favor of ("F/O")**: Prudent Cayman Investment Funds Master SPC - North American Opportunity Master SP
**Account ("A/C")**: ▮▮▮01

**Borrower**

*Any transfers from the Lender to the Borrower should be paid to the following account*:

**Bank Name**: Chase
**SWIFT**: CHASUS33
**ABA**: 021000021
**Favor of ("F/O")**: Alliance Metals
**Account ("A/C")**: ▮▮▮53

This bank account is hereinafter referred to as the "Borrower's Bank Account".



b) **Additional Considerations**:

The Parties hereto acknowledge and agree that any Loan made under this Agreement will be funded into the Borrower's Bank Account, or a the 'lock box' account controlled by the Lender, per Section 4(a) hereto. Thereafter, the funds will be forwarded from the Borrower's Bank Account to another, to be determined, bank account provided by the Borrower at the sole discretion of the Lender (the "Operational Account"). It is duly confirmed and accepted by the Parties that the Lender shall have access to, view, review and control operational and cash disbursement control of the Borrower's Bank Account and the Operational Accounts which Loan proceeds are released to.

If the Lender reasonably deems that there is any breach of the provisions provided herein, it is agreed that the Lender will notify the Borrower and the Borrower will have 1 (one) business day to either (i) explain the circumstances and provide evidence supporting such claims or (ii) cure the breach to the satisfaction of the Lender. If the Borrower does not comply with this provision, the Lender has the right to find the Borrower in default and call or withdraw the funds in Borrower's Bank Account and/or the Operational Account to the Lender's account.

The Borrower will irrevocably assign and pledge to the Lender the receivables referenced in the Pledge Addendum included herein. Please see the Pledge Addendum and Appendix I thereto governing the Borrower's irrevocable pledge of the subject collateral for a given Loan.

## Section 5 - Payment of the Loan

a)   **Interest Payment**: The payment of interest shall occur on a "Interest Payment Date, with such term defined as the date when the Borrower shall pay the Lender the Interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender as per the terms of this Loan Agreement, payable by the Borrower in either one or a combination of the following two ways:

   i.   Upon Receipt of a Call Notice: The Borrower shall ensure each payment will take place within 72 hours after receiving a payment demand for the Interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document, or

   ii.   Lender's Remittance from Borrower's Bank Account: The Lender may, in its sole discretion, release a payment in the amount of the interest amount due at any time from the Borrower's Bank Account to the bank account of the Lender.

b)   **Principal Payment**: The payment of principal shall occur on a "Principal Payment Date", with such term defined as the date when the Borrower shall pay the Lender the Principal owed as per specific request at such time by the Lender. The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the Loan Agreement, as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to



repay any portion of the principal amount earlier then at the end of the Term. The Loan is fully repayable at the end of the Term unless the Lender gives the Borrower a written notice ten (10) days before the end of the Term of an extension to the Term, at the Lender's sole discretion. The Loan can then be renewed for a period to be agreed upon in writing, with the same terms and conditions as in this loan agreement.

Any principal advanced hereunder shall be payable by the Borrower in either one or a combination of the following two ways:

i. Upon Receipt of a Call Notice: The Borrower should be informed ten (10) days prior of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document, or

ii. Lender's Remittance from Borrower's Bank Account: The Lender may, in its sole discretion, release a payment in the amount of the Principal amount due at any time from the Borrower's Bank Account to the bank account of the Lender.

c) All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

d) The payment obligations assumed herein by the Borrower with respect to the repayment of Interest and Principal to the Lender, shall at all times be the most senior payment obligation of the Borrower, unless this is explicitly waived in writing by the Lender.

e) In order to effectuate a request for repayment of any outstanding amounts under this Agreement, the Lender will cause to be delivered a Call Notice Request, as included hereto in Exhibit B, to the Borrower. The repayment of any amounts considered under the Call Notice Request shall be subject to the provisions contained within this Section.

**Section 6 - Duration**

This agreement shall enter into force on the date hereof (the "Execution Date") and is concluded for a fixed period ending at the 7-year anniversary of the Execution Date. The Agreement may be renewed from time to time by an extension of the Master Loan Agreement.

Each extension of the Master Loan Agreement shall be executed by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

**Section 7 – Representations and Warranties**

a) Both of the Parties hereto represent and warrant to the other party as follows:

(i) Both parties have the full power and authority and have taken all action necessary to execute and deliver this Agreement and to fulfil their obligations hereunder, and to consummate the transactions contemplated by this Agreement;



(ii)  The making and performance of this Agreement and all documents executed and delivered and required to be executed and delivered hereunder do not and will not violate any law or regulation of the jurisdiction of its incorporation or any other law or regulation applicable to either of them;

(iii) This Agreement has been duly executed and delivered by either party and constitutes their legal, valid and binding obligation, enforceable in accordance with its terms;

(iv)  All consents, licenses, approvals, authorizations, registrations (including filling this agreement with any required governmental agencies), filings, opinions and declarations from or with any agency, department, administrative authority, statutory corporation, or judicial entity necessary for the validity or enforceability of their respective obligations under this Agreement have been obtained and no governmental authorizations other than any already obtained are required in connection with the execution, delivery and performance of this Agreement.

b)  The Borrower further represents and warrants to the Lender that on and as of the Effective Date the Borrower is not aware of any defense to payment arising out of any act or omission of the Borrower, or any right of offset or counterclaim against the Borrower.

## Section 8 - Events of Default

8.1

a) In the event:

(i)    The Borrower fails to pay any sum due from it hereunder at the time, in the currency and in the manner specified herein; or

(ii)   Any representation or statement made by the Borrower in this Agreement or any notice or other document, certificate, or statement delivered by it pursuant hereto or in connection herewith is or proves to have been incorrect or misleading when made; or

(iii)  The Borrower fails duly to perform or comply with any of the obligations expressed to be assumed by it in this Agreement; or

(iv)   The Borrower fails duly to perform or comply with any other obligation expressed to be assumed by them in this Agreement and such failure is not remedied within seven (7) business days after the Lender has given notice thereof to the Borrower; or

(v)    Any indebtedness of the Borrower is not paid when due, or any indebtedness is declared to be or otherwise becomes due and payable prior to its specified maturity or any creditor of the Borrower becomes entitled to declare any indebtedness due and payable to its specified maturity; or



(vi)     The Borrower is unable to pay its debts as they fall due, commences negotiations with any one or more creditors with a view to the general readjustment or rescheduling of its indebtedness or makes a general assignment for the benefit of or a composition or arrangement with its creditors; or

(vii)    The Borrower is declared bankrupt; or

(viii)   The Borrower repudiates this Agreement or does or causes to be done any act or thing evidencing an intention to repudiate this Agreement.

b) Then, the Lender may:

(i)     Declare the Loan to be immediately due and payable (where upon the same shall become so payable together with interest accrued due thereon), and/or

(ii)    Declare that the Loan shall be cancelled, whereupon the same shall be cancelled.

8.2     If, pursuant to Section 8.1, the Lender declares the Loan to be due and payable on the demand of the Lender, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over equity investors, any other creditors, or any other member of the capital structure, in any future bankruptcy process in regards to realizing the repayment of the amounts owed to the Lender in accordance to the terms of this agreement.

**Section 9 – Pledge of Assets**

a) The obligation of the Borrower to repay any Loan to the Lender under this Agreement shall be guaranteed by the pledge of any and all other assets held by the Borrower.

b) The Borrower shall provide a specific security interest in a pool of receivables (the "Collateral Pool") which shall be pledged, free and clear of any incumbrances, to the benefit of Lender. If any advance rate concepts are decided to be employed hereunder, such advance rates shall be calculated as a percentage (%) of the face-value of the Collateral Pool and may be determined at the sole discretion of the Lender. However, this shall be communicated to the Borrower, in writing, prior to the release of any monies.

c) The Borrower hereby undertakes and commits to executing the necessary registrations, signatures and actions within United States, as to make any and all such pledges fully valid and enforceable against the Borrower, upon request in writing by the Lender, within the timeframe required by the Lender in said written request.

d) Please refer to the Pledge Addendum herein.



### Section 10 - Assignment

This Agreement shall bind and inure to the benefit of the respective successors of the Parties hereto, except that the Borrower may not assign or otherwise transfer all or any parts of its rights or obligations under this Agreement without the prior written consent of the Lender.

### Section 11 – Remedies and Waivers, Partial Invalidity

No failure to exercise, nor any delay in exercising, any right or remedy under this agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise thereof or the exercise of any other right or remedy. The rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

If, at any time, any provision of this agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions thereof, nor the legality, validity or enforceability of such provision under the law of any other jurisdiction, shall in any way be affected or impaired thereby.

### Section 12 – Taxes and other deductions

All sums payable by the Borrower under this Agreement shall be paid free and clear of taxes (except to the extent required by the law) without any deduction or withholding for or on account of any present or future tax duties, fees or charges of any nature now or hereafter imposed by the United States or any other country, any political subdivision or taxing authority thereof or any federation or organization.

### Section 13 - Counterparts

This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

### Section 14 - Applicable Law

This Agreement is exclusively subject to the laws of the Cayman Islands.

### Section 15 - Jurisdiction

Exclusive jurisdiction is given to the Courts of the state of Florida and any claims arising under the present Agreement must be submitted to the Date County.

### Section 16 – Notice

All notices, advice, statements, requests, demands and other communications ("**Notices**") under this Agreement shall be made in the English language and shall be given or made to the other Party in writing or- but then, except for routine notices, to be confirmed in writing - by email and shall be addressed to them at the addresses included in the Preamble.



**IN WITNESS WHEREOF** the Parties to this Agreement have caused this Agreement to be duly executed and signed, in as many original copies as there are Parties to this Agreement, each Party declaring having received one original copy.

### The Lender

**Name**: Dennis Klemming
**Capacity**: Board Member

**By**:_____
**Date**:

**Name**: Giovanni Cataldi
**Capacity**: Board Member

**By**:_____
**Date**:

### The Borrower

**Name**: Jacob Gitman
**Capacity**: President

**By**:_____
**Date**: 09. 11. 2018

**Name**: Larry Gitman
**Capacity**: Manager

**By**:_____
**Date**: 09. 11. 2018



## Exhibit A

## NOTICE OF DRAWDOWN

**Prudent Cayman Investment Funds Master SPC - North American Opportunity Master SP**
103 South Church Street, PO Box 10240,
KY1-1002, Grand Cayman,
Cayman Island

Attn.: Mr. Dennis Klemming

Ref: Notice of Drawdown under the Master Loan Agreement

Dear Sir,

1.  We refer to Section 4 of the Master Loan Agreement (the "Agreement"), executed by and between the Borrower and Lender on 11/14/2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a Loan to be effected under the terms of the Agreement, as follows:

| Beneficiary Bank: | Chase | | Amount: | |
|---|---|---|---|---|
| ABA | 267084131 | | Currency: | USD |
| Beneficiary Bank Swift: | CHASUS33 | | Date of Drawdown: | |
| Beneficiary Name: | Alliance Metals | | MLA Maturity Date: | 11/14/2025 |
| Beneficiary Account Number: | ████53 | | Interest: | 17.00% p.a. |

3. This Loan shall be repaid in accordance with the terms of this Notice of Drawdown and the Agreement, and we hereby irrevocably confirm our interest in receiving such funds at your earliest convenience.

### The Lender

**Name**: Dennis Klemming

**Capacity**: Board Member

**By**:_____

**Date**:


**Name**: Giovanni Cataldi

**Capacity**: Board Member

**By**:_____

**Date**:





**The Borrower**

**Name**: Jacob Gitman

**Capacity**: President

**Name**: Larry Gitman

**Capacity**: Manager

By: _____

Date: 09. 11. 2018

By: _____

Date: 09. 11. 2018



**Exhibit B**

## CALL NOTICE REQUEST FORM

**TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS)**
1111 Kane Concourse, Bay Harbor Island, 33154
Florida, USA

Attn.: Mr. Jacob Gitman / Larry Gitman

Ref: Notice of Repayment under the Master Loan Agreement:

Dear Sirs,

1. We refer to Section 5 of the Agreement, executed by and between executed by and between the Borrower and Lender on 11/14/2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a REPAYMENT to be effected under the terms of the Agreement, as follows:

| | | | |
|---|---|---|---|
| **Beneficiary Bank:** | CIBC Bank USA | **Amount:** | |
| **Beneficiary Bank Swift:** | PVTBUS44 | **Currency:** | |
| **Beneficiary Name:** | Prudent Cayman Investment Funds Master SPC - North American Opportunity Master | **Date of Call Request:** | |
| **Beneficiary Account Number:** | ▮▮▮▮01 | | |

3. The repayment outlined herein shall be repaid in accordance with the terms of this Call Notice Request Form and the Agreement, and by singing hereunder, the Lender irrevocably confirm its interest in receiving such funds per the allotted time in this Agreement.

**The Lender**

**Name**: Dennis Klemming                    **By**:_____

**Capacity**: Board Member                   **Date**:


**Name**: Giovanni Cataldi                   **By**:_____

**Capacity**: Board Member                   **Date**:





**Exhibit C**

## Pledge Addendum for MLA-NAO E1-091118 USD

*by and between*

### Technocon International Inc. (D/B/A Alliance Metals)

*and*

### Prudent Cayman Investment Funds Master SPC – North American Opportunity Master

As security for the obligations created under this Master Loan Agreement, Technocon International Inc (D/B/A Alliance Metals) (the "**Assignor**") hereby assigns and pledges to the Prudent Cayman Investment Funds Master – North American Opportunity Master (the "**Assignee**") all of the Assignor's rights, title and interest in the receivables outlined herein and all other proceeds remitted to the beneficiary account of such pledged receivables (jointly defined as "**Assigned Deposits**"), and grants to the Assignee, a security interest therein, and agrees that until satisfaction in full of all obligations, the Assignee shall have and possess the entire right, title and interest in and to the Assigned Deposits. Moreover, in the event the Assignee is not the beneficiary of certain receivables, Assignor gives authority to Assignee to have access to view, review and control operational and cash disbursement control of the Assignor's Assigned Deposits.

The Assignor agrees that the Assignee is hereby authorized to deduct directly from the Assigned Deposits all amounts due to the Assignee under this Pledge Addendum without any prior notice or any authorization from the Assignor.

The Assignee is hereby authorized, but not obligated, to file UCC financial statements and amendments thereto and continuation thereof, and any other related filings, in the name of the Assignor without any signature of Assignor to further evidence the Assignee's interest in the Assigned Deposits, to the extent deemed necessary or appropriate by Assignee. The parties agree that the Assignor shall at all times be deemed the first priority security interest holder of the correlative specific receivables as outlined in the Appendix included herein.

The Assignor surrenders all authority to withdraw, disburse or receive the benefits of the Assigned Deposits, unless otherwise stated in writing by the Assignee. This Pledge Addendum is irrevocable so long as any Obligations are outstanding and shall terminate only upon the Assignee's acknowledgement in writing that this Pledge Addendum has terminated.

Except as expressly provided elsewhere in this Pledge Addendum, all proceeds received by Assignor in respect of including, but not limited to, any insurance money collected from a third-party payor upon all or any part of the Assigned Deposits shall be applied in full or in part by the Assignee against, the amount obligated to pay in the following order of priority:

    **first**, to the amount received by Assignor from Assignee plus interest;
    **second**, to the extent of any excess of such proceeds, to the payment of all other money lent for the ratable benefit of the Assignee; and
    **third**, to the extent of any excess of such proceeds, to the payment to or upon the order of such Assignor or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.



**The Lender**

**Name**: Dennis Klemming                **By**:_____

**Capacity**: Board Member              **Date**:

**Name**: Giovanni Cataldi              **By**:_____

**Capacity**: Board Member              **Date**:

**The Borrower**

**Name**: Jacob Gitman                  **By**: _____

**Capacity**: President                 **Date**: 09/11/2018

**Name**: Larry Gitman                  **By**: _____

**Capacity**: Manager                   **Date**: 09. 11. 2018



**Appendix I**

**<u>Exhibit C</u>**

**Intercreditor Agreement**

# INTERCREDITOR AGREEMENT

This INTERCREDITOR AGREEMENT, dated as of November 9, 2023 (this "Agreement"), is among PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER SP, represented by its Investment Manager and Directors (the "Subordinating Creditor"), Technocon International Inc., a Florida Corporation, and its subsidiary, Alliance Metals LLC, a Florida limited liability company (collectively, the " Debtor"), and Truewind Management LLC, a Florida limited liability company (the "Senior Creditor").

## RECITALS

A. Whereas, the Senior Creditor has acquired a security interest in assets of the Debtor in which the Subordinating Creditor has also an interest, including **but not limited to** the Senior Creditor Collateral as defined in this Agreement and identified in the Loan Agreement between Truewind Management LLC and Alliance Metals LLC dated as of November 8, 2023 (as amended, modified, supplemented, or restated and in effect from time to time, the "**Senior Creditor Loan Agreement**").

B. Whereas, Debtor and Subordinating Creditor entered to the Master Loan Agreement dated as of September 11, 2018 (as amended, modified, supplemented, or restated and in effect from time to time, the "**Subordinating Creditor Loan Agreement**") by and among Technocon International Inc and its affiliates and subsidiaries (including Alliance Metals LLC as its subsidiary) pursuant to which such Subordinating Creditor has agreed to extend credit to the Debtor on the terms and subject to the conditions specified in the Subordinating Creditor Loan Agreement. All of the Debtor's obligations under the Subordinating Creditor Loan Agreement are secured by liens on and security interests in all of the Debtor's now-existing and hereafter acquired assets.

C. The Creditors are executing this Agreement to set forth their lien priorities with respect to the Senior Creditor Collateral.

D. To induce Senior Creditor to extend financial accommodations to the Debtor, the Subordinating Creditor has agreed to subordinate in favor of Senior Creditor its security interest in the Senior Creditor Collateral.

NOW, THEREFORE, in consideration of the premises, and intending to be legally bound hereby, the Creditors hereby agree as follows:

## AGREEMENT

1. **DEFINITIONS.** The following terms used herein shall have the following meaning. All capitalized terms not herein defined shall have the meaning set forth in the Uniform Commercial Code, as enacted in the Chosen State on the date hereof:

1.1 "**Bankruptcy Code**" – Title 11 of the United States Code.

1

1.2 "**Chosen State**" - Florida

1.3 "**Creditors**" –The Subordinating Creditor and the Senior Creditor.

1.4 "**Debtor**" – See preamble.

1.5 "**Paid in Full**"  - means, with respect to any obligations of the Debtor pursuant to any loan agreement or similar agreement providing for the extension of credit, that: (a) all of such obligations (other than contingent obligations or indemnification obligations for which no underlying claim has been asserted) have been paid, performed, or discharged in full (with all obligations consisting of monetary or payment obligations having been paid in full in cash), (b) no Person has any further right to obtain any loans, letters of credit, or other extensions of credit under the applicable loan documents, and (c) any and all letters of credit or similar instruments issued under such loan documents have been cancelled and returned (or backed by stand-by guarantees or cash collateralized) in accordance with the terms of such loan documents.

1.5 "**Party**" – Each of the Subordinating Creditor, the Debtor, and the Senior Creditor.

1.6 "**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, governmental authority, or other entity.

1.6 "**Secondary Collateral**" – Collateral of a Subordinating Creditor holding a security interest which is inferior to the priority of the Senior Creditor.

1.7 "**Senior Creditor**" – See preamble.

1.8 "**Senior Creditor Collateral**" means any and all present and future right, title, and interest of the Debtor in and to the following, whether now owned or hereafter acquired, existing or arising, and wherever located:

> (a) Debtor's Accounts Receivables that are specifically pledged under the Senior Creditor Loan Agreement as evidenced by the applicable promissory notes.

> (b) Insurance proceeds related to the Accounts Receivables that are specifically pledged under the Senior Creditor Loan Agreement as evidenced by the applicable promissory notes;

> (c) DACA deposit accounts maintained exclusively for identifiable proceeds of the foregoing Accounts Receivables that are specifically pledged under the Senior Creditor Loan Agreement as evidenced by the applicable promissory notes;

> (d)Proceeds from the Debtor's accounts receivable that are not part of the pledged Accounts Receivable in the amount not exceeding twenty percent (20%) of then funds lent to the Debtor under the Senior Creditor Loan Agreement . For the avoidance of doubt, this subsection (d) will be leveraged only in the event of Debtor's breach of its Senior Creditor Obligations under any of the applicable Promissory Notes (as defined in the Senior

2

Creditor Loan Agreement) and in the event the proceeds identified in Section 1.8 (a), (b) and (c), at Senior Creditor's view, are not sufficient for the Debtor to satisfy Senior Creditor Obligations. In addition, if Debtor has Paid in Full to cover its Senior Creditor Obligations under certain Accounts Receivable pledged as part of the Senior Creditor Collateral and should the Senior Creditor receive proceeds from the insurance company as a result of non-payment for those Accounts Receivable by the Debtor's customer, then the Senior Creditor will remit the received insurance proceeds to the Debtor within five (5) business days from its receipt.

Terms used in the foregoing are defined in the Senior Creditor Loan Agreement between Senior Creditor and Debtor. Those, which are not otherwise defined in this Agreement have the meanings specified in the UCC.

1.9 "**Senior Creditor Obligations**" - Obligations of the Debtor to the Senior Creditor secured by the Senior Creditor Collateral under the Senior Creditor Loan Agreement.

1.10 "**Subordinating Creditor**" – means the entity listed as a signatory to this Agreement and any and all related entities of the Subordinated Creditor whether connected legally or through their Investment Manager and Directors as defined in the applicable Subordinated Creditor Agreement and that extended credit facilities to the Debtor whether prior to the date of this Agreement or will extend such credit facilities in the future.

1.11 "**Subordinating Creditor Agreements**" – All agreements now or hereafter entered into between Subordinating Creditor and Debtor which create an obligation which is secured by the Senior Creditor Collateral.

1.12 "**Subordinating Creditor Obligations**" – Indebtedness owed by the Debtor to the Subordinating Creditor secured by Senior Creditor Collateral.

## 2. **PRIORITY.**

2.1 Notwithstanding the terms or provisions of any agreement or arrangement which either Creditor may now or hereafter have with the Debtor or any rule of law, and irrespective of the time, order, or method of attachment or perfection of any security interest or the recordation or other filing in any public record of any financing statement, the Senior Creditor Obligations and any security interests in the Senior Creditor Collateral now or hereafter held by the Senior Creditor, whether or not perfected, are and shall remain senior to:

2.1.1 The Subordinating Creditor Obligations;

2.1.2 Any lien therein now or hereafter held by the Subordinating Creditor relating to the assets in which a Senior Creditor holds a lien.

## 3. **ENFORCEMENT OF SECURITY INTEREST.**

3

3.1 The Subordinating Creditor shall have no right to take any action with respect to its Secondary Collateral, whether by judicial or non-judicial foreclosure, recordation or enforcement of mechanics liens, notification to the Debtor's Account Debtors, the seeking of the appointment of a receiver for any portion of the Debtor's assets, setoff, or otherwise, unless and until all Senior Creditor Obligations have been Paid in Full.

3.2 If the Subordinating Creditor, in contravention of the terms of this Agreement, shall commence, prosecute, or participate in any suit, action, or proceeding against the Debtor or initiate any foreclosure sale or proceeding or any other action to enforce its lien on any of the Senior Creditor Collateral, then the Debtor may interpose as a defense or plead the making of this Agreement, and the Senior Creditor may intervene and interpose such defense or plea in its name or in the name of the Debtor.

## 4. **PROCEEDS OF COLLATERAL.**

4.1 All proceeds of Senior Creditor Collateral (including any interest earned thereon) resulting from any enforcement action, and whether or not pursuant to an insolvency proceeding, shall be distributed as follows: first, to the Senior Creditor to be applied in accordance with the Senior Creditor Loan Agreement until the Senior Creditor Obligations are Paid in Full; second, to the Subordinating Creditor to be applied in accordance with the Subordinating Creditor Loan Agreement until the Subordinating Creditor Obligations are Paid in Full; and thirdly, to the Debtor, or as a court of competent jurisdiction may direct.

4.2 Until the Senior Creditor Obligations shall have been Paid in Full, Subordinating Creditor may not accept Senior Creditor Collateral, including proceeds in satisfaction, in whole or in part, of the Subordinating Creditor Obligations in violation of this Section 4.1. Any Senior Creditor Collateral proceeds received by the Subordinating Creditor that is not permitted to be received pursuant to the preceding sentence shall be segregated and held in trust and promptly turned over to the Senior Creditor to be applied in accordance with Section 4.1 in the same form as received, with any necessary endorsements. Upon the turnover of such Senior Creditor Collateral proceeds as contemplated by the immediately preceding sentence, the Subordinating Creditor Obligations purported to be satisfied by the payment of such Senior Creditor Collateral proceeds shall be immediately reinstated in full as though such payment had never occurred.

4.3 Any proceeds of Senior Creditor Collateral that are due in accordance with this Section 4 not paid within 15 days of receipt of such proceeds by the Subordinating Creditor shall accrue a late charge at the rate of 18% per annum.

## 5. **SUBORDINATING CREDITOR COVENANTS AND WARRANTIES.**

5.1 The Subordinating Creditor warrants, covenants and represents that it:

5.1.1 Is the owner of the Subordinating Creditor Obligations;

Document Ref: MC3KD-CIG6H-USYGP-O2VU5

5.1.2 Is the Secured Party of record in each UCC Financing Statement listed on the attached Exhibit A.

5.1.3 Will not, at any time while this Agreement is in effect assign any of the Subordinating Creditor Obligations to any Person which does not agree in a writing, satisfactory in form and substance to the Senior Creditor, to be bound by all of the obligations of the Subordinating Creditor hereunder. In the case of any such proposed assignment by the Subordinating Creditor, it will notify the Senior Creditor at least 10 business days prior to the date of any of such assignment.

5.1.4 Waives any rights it may have to claim that the enforceability of this Agreement may be affected by any subsequent modification, release, extension, or other change, material or otherwise, in the Senior Creditor Obligations or the Senior Creditor Collateral.

6. **REMEDY FOR BREACH.**

6.1 Any breach hereof is likely to cause irreparable damage to the aggrieved party. Therefore, the relief to which such party shall be entitled in such event shall include, but not be limited to: judicial relief to prevent a violation of any of the provisions of this Agreement and any other relief to which it may be entitled at law or in equity. Further, it is agreed that any breach of this contract by a Party shall have a 30 day cure period where the Party that is in breach of this contract can rectify any such instances.

7. **AMENDMENT OF SUBORDINATING CREDITOR AGREEMENTS.**

7.1 This Agreement shall be deemed an amendment to all present and future Subordinating Creditor Agreements, which cannot be further amended to affect the rights of Senior Creditor hereunder.

7.2 The consent of Senior Creditor shall not be required for any further amendment of the Subordinating Creditor Agreements as long as they are not in contradiction of the terms agreed in this Agreement.

8. **EFFECT OF BANKRUPTCY.**

8.1 This Agreement shall remain in full force and effect notwithstanding the filing of a petition for relief by or against the Debtor under the Bankruptcy Code and, without limiting the foregoing shall apply with full force and effect with respect to all Senior Creditor Collateral acquired by the Debtor, and obligations incurred by the Debtor to the Senior and Subordinating Creditors, subsequent to the date of any such petition.

8.2 If the Debtor shall become subject to a proceeding under the Bankruptcy Code and if Senior Creditor shall permit the use of cash collateral or provides financing to Debtor under either Section 363 or Section 364 of the Bankruptcy Code:

5

8.2.1 Adequate notice to Subordinating Creditor shall have been provided if Subordinating Creditor receives notice five business day prior to the entry of the appropriate order; and

8.2.2 Subordinating Creditor will raise no objection thereto on the ground of a failure to provide adequate protection for Subordinating Creditor's security interest in the Senior Creditor Collateral.

## 9. NO DUTY TO PROVIDE FINANCIAL ACCOMMODATIONS. ADDITIONAL DEBT

9.1 Nothing contained herein or in any prior agreement or understanding between the Creditors shall be deemed to create any duty on the part of either Creditor to extend or continue to extend financial accommodations to the Debtor.

9.2 The Debtor may from time to time, subject to any limitations contained in the Senior Creditor Loan Agreement and Subordinating Creditor Loan Agreement in effect at such time, incur additional indebtedness and related obligations that are, or are to be, secured by liens on any assets of the Debtor that would, if such liens were granted constitute Senior Credit Collateral and shall deliver to each of the Subordinating Creditor and the Senior Creditor a certificate of an officer of the Debtor:

> (a)     Describing the indebtedness and other obligations  including a statement of the maximum aggregate outstanding principal amount of such indebtedness as of the date of such certificate.

> (b)     Certifying that the incurrence of such indebtedness, the creation of the liens securing such indebtedness and related obligations hereunder (i) do not violate or result in a default under any provision of the Senior Creditor Loan Agreement or Subordinating Creditor Loan Agreement  in effect at such time.

> (c)     Attaching a fully completed joinder agreement to this Agreement that was previously reviewed and accepted  by Senior Creditor and Subordinating Creditor.

Incurrence of additional debt by Debtor in violation of the procedure described in this Section 9 will be considered a breach and in violation of this Agreement.

## 10. CHOICE OF LAW.

10.1 This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the  State of Florida.

10.2 Each party hereto irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against any other party hereto in any way relating to this Agreement or the transactions contemplated hereby, in any forum other than the courts of the State of Florida sitting in Miami-Dade County and of the United States District Court of the Eleventh Judicial Circuit , and any appellate court from any thereof. Each of the parties hereto irrevocably

Document Ref: MC3KD-CIG6H-USYGP-O2VU5

and unconditionally submits to the exclusive jurisdiction of such courts and agrees that any such action, litigation, or proceeding may be brought in any such Florida State court or, to the fullest extent permitted by applicable law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

10.3 Each party hereto irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court referred to in Section 10.2. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

10.4 Each party hereto irrevocably consents to the service of process in the manner provided for notices in Section 17 and agrees that nothing herein will affect the right of any party hereto to serve process in any other manner permitted by applicable law.

10.5 Waiver of Jury Trial. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE, OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

11. **AMENDMENT AND WAIVER.**

11.1 Only a writing signed by all parties hereto may amend this Agreement. No failure or delay in exercising any right hereunder shall impair any such right that Senior Creditor may have, nor shall any waiver by Senior Creditor hereunder be deemed a waiver of any default or breach subsequently occurring. Senior Creditor's rights and remedies herein are cumulative and not exclusive of each other or of any rights or remedies that Senior Creditor would otherwise have.

12. **CONSTRUCTION OF AGREEMENT**

12.1 This Agreement and all agreements relating to the subject matter hereof is the product of negotiation and preparation by and among each Party and its respective attorneys. This Agreement, which the parties hereto expressly acknowledge is a "subordination agreement" under section 510(a) of the Bankruptcy Code, shall be effective before, during, and after the commencement of an Insolvency Proceeding. All references in this Agreement to the Debtor shall include the Debtor as a debtor-in-possession and any receiver or trustee for the Debtor in any Insolvency Proceeding.

Document Ref: MC3KD-CIG6H-USYGP-O2VU5

13. **BENEFITS OF THIS AGREEMENT.**

13.1 This Agreement is solely for the benefit of and shall bind the Creditors and their respective successors and assigns and no other entity shall have any right, benefit, priority, or interest hereunder.

13.2 In the event that Senior Creditor assigns its rights hereunder in connection with an assignment of the Senior Creditor Obligations, the assignee ("Assignee") shall enjoy the benefits hereof, without any requirement of the consent of the Subordinating Creditor so long as the Assignee notifies the Subordinating Creditor:

13.2.1 Of such assignment, and

13.2.2 That the Assignee agrees to bound by the terms hereof as if it were the Senior Creditor.

14. **TERM.**

14.1 The subordination by Subordinating Creditor as set forth herein may only be terminated with the written consent of the Senior Creditor.

14.2 The Senior Creditor must consent to the termination of this subordination upon the occurrence of all of the following:

14.2.1 Payment in Full of the Senior Creditor Obligations;

14.2.2 Termination of all Security Agreements which create Security Interests which secure the Senior Creditor Obligations.

14.2.3 Upon the occurrence of Sections 14.2.1 and 14.2.2, written receipt for a request for such consent is received by Senior Creditor from Subordinating Creditor.

15. **ATTORNEYS FEES.**

15.1 In the event that any Party finds it necessary to retain counsel in connection with the interpretation, defense, or enforcement of this agreement, the prevailing Party shall recover its reasonable attorney's fees and expenses from the unsuccessful Party. It shall be presumed (subject to rebuttal only by the introduction of competent evidence to the contrary) that the amount recoverable is the amount billed to the prevailing Party by its counsel and that such amount will be reasonable if based on the billing rates charged to the prevailing Party by its counsel in similar matters.

16. **COUNTERPARTS.**

16.1 This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an

8

executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any Party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other Party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other Party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

17. **NOTICE.**

17.1 All notices shall be effective upon delivery to a recognized overnight delivery service of a properly addressed notice, delivery prepaid, with instructions to make delivery on the next business day with a copy sent by email. For purposes hereof, the addresses of the parties are as set forth below or as may otherwise be specified from time to time in a writing sent by one party to the other in accordance with the provisions hereof:

**Subordinating Creditor**

Address: 929 Alton Rd., Suite 500 Miami Beach, FL 33139
Attention: US Investment Manager LLC
Email: dennis@prudentgroup.us


**Debtor**

Address: 1241 Gnat Pond Road, Leighton, AL 35646
Attention: Ariel Gitman
Email: ariel@alliancemetalsusa.com

**Senior Creditor**

Address: 17001 Collins Avenue, Apt 1704, Sunny Isles Beach, FL 33160
Attention: Ekaterina Koroleva
Email: e.koroleva@truewindmgmt.com

[END OF DOCUMENT – SIGNATURE FOLLOWS]

9

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

**Subordinating Creditor:**

PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER SP

By *Dennis Klemming*
Name: Dennis Klemming
Title: Director

**Debtor:**

Technocon International Inc.

By *Ariel Gitman*
Name: Ariel Gitman
Title: President

Alliance Metals LLC

By *Ariel Gitman*
Name: Ariel Gitman
Title: President

**Senior Creditor:**

Truewind Management LLC

By_____
Name: Ekaterina Koroleva
Title: Managing Director

**EXHIBIT A**

| FILING DATE | FILING NUMBER | FILING OFFICE JURISDICTION |
|---|---|---|
| 5/10/2023 | . 202301281322 | Florida |

1

# Signature Certificate

Reference number: MC3KD-CIG6H-USYGP-O2VU5

| Signer | Timestamp | Signature |
|---|---|---|

**Ekaterina Koroleva**
Email: keinesommer@gmail.com

| | |
|---|---|
| Sent: | 07 Nov 2023 22:11:07 UTC |
| Viewed: | 07 Nov 2023 22:11:10 UTC |
| Signed: | 07 Nov 2023 22:11:24 UTC |



IP address: 76.88.3.211
Location: San Diego, United States

**Ariel Gitman**
Email: ariel@alliancemetalsusa.com

| | |
|---|---|
| Sent: | 07 Nov 2023 22:11:07 UTC |
| Viewed: | 07 Nov 2023 23:22:11 UTC |
| Signed: | 07 Nov 2023 23:48:01 UTC |

**Recipient Verification:**

| | |
|---|---|
| ✔Email verified | 07 Nov 2023 23:22:11 UTC |

IP address: 174.218.248.154
Location: Tampa, United States

**Dennis Klemming**
Email: dennis@prudentgroup.us
Shared via link

| | |
|---|---|
| Sent: | 07 Nov 2023 22:11:07 UTC |
| Viewed: | 08 Nov 2023 02:49:19 UTC |
| Signed: | 08 Nov 2023 02:49:46 UTC |

IP address: 204.28.106.2
Location: Miami, United States

Document completed by all parties on:
08 Nov 2023 02:49:46 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 40,000+ companies worldwide.



**<u>Exhibit D</u>**

**May 12, 2024 Correspondence**



**DLA Piper LLP (US)**
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

R. Craig Martin
craig.martin@us.dlapiper.com
T   302.468.5655
F   302.778.7834

May 12, 2024
*VIA E-MAIL*

Joshua R. Kon
Stok Kon + Braverman
1 East Broward Blvd., Suite 915
Fort Lauderdale, FL 33301

Re:     *Alliance Metals LLC v. C T Corporation Systems*, Case No.: 2024-006339-CA-01

Dear Mr. Kon:

I represent Mr. Mitchell Mansfield and Mr. Samuel Cole, in their capacity as the Joint Official Liquidators ("JOLs") of Cayman Investment Funds Master SPC (In Official Liquidation) ("the Master Fund") and Cayman Investment Funds SPC (In Official Liquidation) ("the Feeder Fund").

As you are aware, the Master Fund has contended that it has a valid lien on Alliance Metals LLC's collateral because of a Master Loan Agreement, dated September 11, 2018, between the Master Fund and "Technocon International Inc. d/b/a Alliance Metals."  On November 9, 2023, Alliance Metal LLC's president, Ariel Gitman, signed an Intercreditor Agreement in which he acknowledged that the Master Fund "has agreed to extend credit to the Debtor", defined in the Intercreditor Agreement as Technocon International Inc. and its subsidiary Alliance Metals LLC, and that the Master Fund's obligations are "secured by liens on and security interest in all of the Debtor's now-existing and hearing after acquired assets."

As explained in letters from Mr. Cole and others to Ms. Ekaterina Koroleva and Technocon International Inc (D/B/A Alliance Metals), that Intercreditor Agreement was not validly signed by the Master Fund as it was signed after the appointment of the JOLs as Joint Voluntary Liquidators on 31 October 2023.  You acknowledged receipt of these letters in your correspondence to Mr. Cole dated March 18, 2024, that you wrote on behalf of your clients, both Technocon International, Inc. and Alliance Metals LLC.  You state in that correspondence that "Technocon is not a party to the Intercreditor Agreement. Only Alliance is. Alliance is a distinct entity. To that end, your UCC-1 Statement listing Alliance is unauthorized . . .."  A review of the preamble and signature pages reveals, however, that Mr. Ariel Gittman signed the Intercreditor Agreement on behalf of both Technocon and Alliance.  Technocon is a party to the Intercreditor Agreement and all your contentions in the March 18, 2024 letter are incorrect.

What the Intercreditor Agreement also shows is that your client, Alliance, and you as counsel to Alliance, were aware that the Master Fund, acting through the JOLs, had asserted valid liens in Alliance's assets and indeed Alliance had acknowledged those very liens in the Intercreditor Agreement.



Joshua R. Kon
May 12, 2024
Page Two


Yet, when you commenced litigation over these issues, you sued C.T. Corporation Systems and did not provide any notice to the JOLs.  You are now in the process of seeking to obtain a default judgment without affording the JOLs and the Master Fund the due process of law to which they are entitled.  The JOLs, not having received notice, were not aware of Alliance's action until May 7, 2024, only two days before you filed a notice of a default judgment.

Accordingly, the JOLs demand that Alliance voluntarily vacate the default judgment and either name the Master Fund as the real party in interest whose financial and legal rights you seek to effect in the litigation against C.T. Corporation Systems, or that you notify the Court of the Master Fund's interest in the litigation so it may file a motion to intervene or take other appropriate action to protect the Master Fund's security interest in Alliance Assets.

I am available to meet and confer over these issues; in the meantime, the JOLs reserve their rights and those of the Master Fund with respect to Alliance's attempt to disavow the security interest it acknowledged as valid in the Intercreditor Agreement.

Sincerely,

R. Craig Martin

## Exhibit 6

**Motion to Vacate**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

ALLIANCE METALS LLC,

       Plaintiff,

v.                                      Case No. 2024-006339-CA-01
                                              Section: CA06

C T CORPORATION SYSTEM, a Delaware
Corporation,

       Defendant.

_____/

## MOTION TO VACATE CLERK'S DEFAULT

Comes now Mitchell Mansfield and Samuel Cole, in their capacity as Joint Official Liquidators (the "**JOLs**") of Cayman Investment Funds Master SPC (In Official Liquidation) (the "**Master Fund**") and Cayman Investment Funds SPC (In Official Liquidation) (the "**Feeder Fund**" and with the Master Fund, the "**Funds**"), Movants herein, and respectfully represent the following:

1.      Messrs. Mansfield and Cole were appointed as Joint Voluntary Liquidators ("**JVLs**") of the Master Fund on October 31, 2023, under a written resolution of the sole voting shareholder of the Master Fund, US Investment Manager, LLC.  Following the appointment of the JVLs, in accordance with section 119(5) of the Cayman Islands Companies Act (2023 Revision), the powers of the directors of a company cease without the explicit sanction of the appointed liquidators, and thus, following the appointment of the JVLs, the powers of the directors of the Master Fund had ceased and only Messrs. Mansfield and Cole, as the appointed JVLs, had the authority to act for the Master Fund.

2.      In January 2024, the Cayman Court granted a supervision order placing the Funds into official liquidation under the supervision of the Cayman Court, and the JVLs were appointed

as JOLs to liquidate the Funds, which are segregated portfolio companies established under Cayman Islands' law.  Copies of the Cayman Court Orders appointing the JOLs are attached to this Motion as **Exhibit A**.  One of the segregated portfolios of the Master Fund is the North American Opportunity Master Segregated Portfolio (the "**NAO Master SP**").

3.      The Master Fund, on behalf of the NAO Master SP, entered into a Master Loan Agreement with Technocon International Inc. (D/B/A Alliance Metals)[1] ("**Technocon**") on or about September 11, 2018, and, in section two of that agreement, agreed to lend an aggregate of $20 million to Technocon to be made available in one or multiple transfers (the "**Facility Agreement**").  It is the JOLs' understanding that the loans made by the NAO Master SP under the terms of the Facility Agreement were advanced to Alliance Metals LLC ("**Alliance Metals**"), a subsidiary of Technocon and an operating metal works business.  In the Facility Agreement, Technocon pledged "any and all other assets" to secure its obligations owing to the NAO Master SP under the Facility Agreement.  *See* Facility Agmt., § 9.  This pledge included all of the "rights, title and interests" in defined Assigned Deposits as further explained in an attached Pledge Addendum.  *Id*., Ex. C.  In the Facility Agreement (Section 9(c)) and in the Pledge Addendum, Technocon agreed to execute necessary documents to make all pledges fully valid and enforceable and further agreed that the Master Fund on behalf of the NAO Master SP could "file UCC financial statements and amendments thereto and continuances thereof."  A copy of the Facility Agreement is attached to this Motion as **Exhibit B**.

4.      The JOLs' investigation has revealed that the Master Fund, on behalf of the NAO Master SP, used the services of the Defendant in this action, C T Corporation System, to file UCC-1s in Florida to provide notice of its security interest in Alliance Metals' assets. The UCC-1 filing

---

[1]      Technocon is described in the Facility Agreement as "Technocon International Inc. (D/B/A Alliance Metals)".

statement #202301281322 attached to the Complaint (and that Alliance Metals seeks to have declared void), states that the Defendant is acting "as representative."  Compl., Ex. A.  Thus, the Master Fund, on behalf of the NAO Master SP, as lenders under the Facility Agreement are the real parties in interest and C T Corporation System has no economic stake in this litigation.

5.      Notwithstanding the appointment of the JVLs and the Court conveying the power to act for the Master Fund, the former investment manager of the Funds, and a director of the Master Fund, Dennis Klemming, as director of the Master Fund, executed an Intercreditor Agreement with Alliance Metals and others dated November 9, 2023, for the Master Fund, on behalf of the NAO Master SP, despite the fact that his powers to act as a director of the Master Fund had ceased under Cayman Islands' law upon the appointment of the JOLs.  *See* **Exhibit C**.

6.      The Intercreditor Agreement contains an acknowledgment that the UCC-1, with filing number 202301281322 (*e.g.*, the same UCC-1 challenged in the Complaint), makes the Master Fund and the NAO Master SP the "secured party of record".  While the JOLs contend that the Intercreditor Agreement is not binding to subordinate its lien as it was executed by an individual displaced by the JOLs and thus lacking authority to sign the Intercreditor Agreement, it shows that Alliance Metals recognized the validity of the UCC-1 and the status of the Master Fund and the NAO Master SP as Alliance Metals' secured lender.  A copy of the Intercreditor Agreement is attached to this Motion as **Exhibit D**.

7.      On March 14, 2024, the JOLs wrote to the principal of Alliance Metals who signed the Intercreditor Agreement, Ariel Gittman (who also signed for Technocon International Inc.) and informed him that Mr. Klemming lacked any authority to execute the Intercreditor Agreement on behalf of the Master Fund and that as a result, the Intercreditor Agreement was null and void *ab*

*initio.* The JOLs also wrote to Technocon and explained the problems with the Intercreditor Agreement. A true and correct copy of this correspondence is attached as **Exhibit E**.

8.      Plaintiff's counsel acknowledged receipt of these letters in correspondence to Mr. Cole dated March 18, 2024, purporting to act on behalf both Alliance Metals and Technocon International. In this correspondence, Plaintiff's counsel disputed the JOLs position and threatened litigation to assert damages against the JOLs and, even though not a Cayman Islands lawyer, accused the JOLs of breaching their duties under Cayman Islands' law to creditors. A true and correct copy of this letter is attached as **Exhibit F** to this Motion. The JOLs dispute this letter, but it demonstrates that ***prior to filing the Complaint, Alliance Metals was aware of the interest asserted by the JOLs on behalf of the Master Fund and North American SPC as a secured lender of Alliance Metals.***

9.      Notwithstanding this correspondence that the JOLs were acting for the Master Fund, on behalf of the NAO Master SP, as a lender, and their identification of the loan agreement with Technocon that granted them that status, the Plaintiff filed the Complaint less than a month later on April 10, 2024, without naming or serving the JOLs, and naming the Defendant instead. When the Defendant received the Complaint, it forwarded it to Mr. Niklas Klemming, Mr. Klemming's son, who also worked at the former investment manager, and who did not notify the JOLs about the Complaint until May 7, 2024.

10.     On May 8, 2024, Plaintiff filed a motion for Clerk's default against Defendant. In that Motion, the Plaintiff failed to mention that it has previously received correspondence from, and responded to, the JOLs regarding the status of the Master Fund as a secured lender of Alliance Metals. The day after, the Clerk entered a Clerk's Default. The JOLs were not provided notice of the motion for entry of a Clerk's Default.

11.     By May 12, 2024, the JOLs had engaged counsel who wrote to Plaintiff's counsel and requested that Plaintiff withdraw the Clerk's Default and name the Movants as defendants in this action.  *See* **Exhibit G**.  Plaintiff's counsel responded by email to this letter and disputed the Movants' positions and rights to intervene.  Notwithstanding this correspondence, the Plaintiff filed a Motion for Final Default Judgment, again, not mentioning the JOLs and all the facts relevant to this Court's evaluation of that Motion or providing notice to the JOLs of the Motion for Final Default Judgment.

12.     Contemporaneously with this Motion, the Movants have filed a motion to intervene to defend the Master Fund's secured interests.  The first step to that process is for this Court to vacate the Clerk's Default as improvidently granted under Florida Rule of Civil Procedure 1.500, then to deny the Plaintiff's Motion for Final Default Judgment.

13.     Rule 1.500 provides that "when a party against whom affirmative relief is sought has failed to file or serve any document in the action, the partying seeking relief may have the clerk enter a default against the party failing to serve of file such document."  Fla. R. Civ. Pro. 1.500 (a).

14.     Because it is well-established under Florida law that if there is any reasonable doubt in the matter of vacating a default, it should be granted to allow trial on the merits, Florida courts have interpreted the term "any document" in Rule 1.500(a) "broadly and liberally," including "any written communication that informs the plaintiff of the defendant's intent to contest the Claim."  *See Cardona v. FirstBank P.R.*, 336 So. 3d 418, 421-22 (Fla. 3d DCA 2022) (citations and internal quotations omitted).

15.     Here, the UCC-1 indicates that the Defendant is serving in a representative capacity.  Before filing its complaint, Plaintiff received correspondence from the JOLs indicating

they asserted an interest as a secured lender, **and Plaintiff's counsel responded to that**
**correspondence**.  Once the JOLs became aware of the entry of the Clerk's Default—through their
own diligence and not through notice provided by Plaintiff—they wrote to Plaintiff's counsel and
requested that the Clerk's default be withdrawn and vacated and that Plaintiff's name the JOLs as
a defendant in this action.  Plaintiff refused.  None of this was brought to the Court's attention
when the Clerk's default was requested nor was it mentioned in the Motion for Final Default
Judgment.

      16.    Florida law provides that:

> Entry of a clerk's default as authorized under Florida Rule of Civil
> Procedure 1.500(a) <u>**is not appropriate in cases where the plaintiff**</u>
> <u>**knows that a defendant is represented by counsel who intends to**</u>
> <u>**assert matters in defense of the cause of action**</u>.  In such circumstances,
> the clerical default is improvidently entered, and the ensuing final
> judgment cannot stand.

*Id*. at 422 (emphasis added).  The *Cardona* court further noted that when the Clerk's default was
improvidently entered, the trial court is required to vacate the default and final judgment without
regard to "whether there is a meritorious defense or whether the defendant can demonstrate
inadvertence or excusable neglect."  *Id*. at 423 (citing *Ace Funding Source, LLC v. A1 Transp.*
*Network, Inc.*, 314 So. 3d 726, 728 (Fla. 3d DCA 2021)).  Based on the foregoing, the Court should
vacate the Clerk's Default.

[*Remainder of page intentionally left blank*]

**WHEREFORE**, Movant respectfully requests that the Court vacate the Clerk's Default.

Dated: June 4, 2024

Respectfully submitted,

**DLA PIPER LLP (US)**

By: _/s/ Ardith Bronson_
    Ardith Bronson (FBN 423025)
    Rachel Nanes (FBN 85167)
    Nicole McLemore (FBN 1010885)
    200 South Biscayne Blvd., Suite 2500
    Miami, Florida 33131
    Telephone: (305) 423-8562
    Facsimile: (305) 437-8131
    Email: ardith.bronson@us.dlapiper.com
           rachel.nanes@us.dlapiper.com
           nicole.mclemore@us.dlapiper.com

    - and -

    R. Craig Martin (*pro hac vice* motion pending)
    DLA PIPER LLP (US)
    1201 North Market St., 21st Floor
    Wilmington, Delaware 19801
    Telephone: (302) 468-5700
    Facsimile: (302) 778-7834
    Email: craig.martin@us.dlapiper.com

    *Counsel for Mitchell Mansfield and Samuel Cole,*
    *as Joint Official Liquidators of Cayman*
    *Investment Funds Master SPC (In Official*
    *Liquidation) and Cayman Investment Funds SPC*
    *(In Official Liquidation)*

## <u>CERTIFICATE OF CONFERRAL</u>

I hereby certify that counsel for Mitchell Mansfield and Samuel Cole, as Joint Official Liquidators of Cayman Investment Funds Master SPC (In Official Liquidation) and Cayman Investment Funds SPC (In Official Liquidation) attempted to confer with counsel for Plaintiff Alliance Metals, LLC on multiple occasions in a good faith effort to obtain Plaintiff's position on this Motion.  Plaintiff's counsel indicated that Plaintiff will review the motion before asserting a position.

**DLA PIPER LLP (US)**

By:  _/s/  Ardith Bronson_____
    Ardith Bronson (FBN 423025)
    ardith.bronson@dlapiper.com
    Rachel Nanes (FBN 85167)
    rachel.nanes@us.dlapiper.com
    Nicole McLemore (FBN 1010885)
    nicole.mclemore@us.dlapiper.com
    DLA Piper LLP (US)
    200 South Biscayne Blvd., Suite 2500
    Miami, Florida 33131
    Telephone: (305) 423-8562

    *Counsel for Mitchell Mansfield and Samuel Cole,*
    *as Joint Official Liquidators of Cayman*
    *Investment Funds Master SPC (In Official*
    *Liquidation) and Cayman Investment Funds SPC*
    *(In Official Liquidation)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2024, I electronically filed the foregoing motion with the Florida Courts E-Filing Portal, which will serve the foregoing motion via electronic mail to all counsel of record.

**DLA PIPER LLP (US)**

By:  _/s/  Ardith Bronson_
Ardith Bronson (FBN 423025)
ardith.bronson@us.dlapiper.com
Rachel Nanes (FBN 85167)
rachel.nanes@us.dlapiper.com
Nicole McLemore (FBN 1010885)
nicole.mclemore@us.dlapiper.com
DLA Piper LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, Florida 33131
Telephone: (305) 423-8562

*Counsel for Mitchell Mansfield and Samuel Cole, as Joint Official Liquidators of Cayman Investment Funds Master SPC (In Official Liquidation) and Cayman Investment Funds SPC (In Official Liquidation)*

**<u>Exhibit A</u>**

**Cayman Court Orders**



Digitally signed by Advance Performance Exponent Inc
Date: 2024.01.05 11:09.21 -05:00
Reason: Apex Certified
Location: Apex

Certified to be a true and correct copy
of the original
Dated this 3ʳᵈ day of June 2024

Karen Armstrong
Notary Public in and for the Cayman Islands
My commission expires January 31ˢᵗ, 20 25

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**FSD CAUSE NO: 340 OF 2023 (RPJ)**

**IN THE MATTER OF SECTIONS 124 AND 131 OF THE COMPANIES ACT (2023 REVISION)**

**AND IN THE MATTER OF CAYMAN INVESTMENT FUNDS MASTER SPC (IN VOLUNTARY LIQUIDATION)**

**THE HONOURABLE MR JUSTICE RAJ PARKER**
**IN CHAMBERS**
**4 JANUARY 2024**

---

**SUPERVISION ORDER**

---

**UPON** the application of Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands as Joint Voluntary Liquidators (**JVLs**) of Cayman Investment Funds Master SPC (in voluntary liquidation) (**Company**) by the JVLs' Petition dated 20 November 2023 for an order that the liquidation of the Company continue under the supervision of the Court.

**AND UPON** the Court being satisfied that the application may be determined on the papers without an oral hearing.

**AND UPON** reading the verifying affirmations of Samuel Cole dated 20 November 2023 and Mitchell Mansfield dated 14 December 2023 and the exhibits exhibited thereto.

**AND UPON** reading the written submissions filed by counsel for the JVLs.



**AND UPON** the Court being satisfied that the JVLs are qualified insolvency practitioners in terms of section 89 of the Companies Act (2023 Revision) (**Companies Act**) and as prescribed by regulation 4 of the Insolvency Practitioners Regulations (2023 Consolidation).

**IT IS ORDERED THAT:**

1. The liquidation of the Company be continued under the supervision of the Court.

2. Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands, be appointed as Joint Official Liquidators (**JOLs**) of the Company with the power to act jointly and severally.

3. The JOLs are not required to provide security for their appointment.

4. The JOLs are authorised to take any action they consider necessary or desirable in connection with the liquidation and the winding up of affairs in the Cayman Islands or elsewhere of the Company and its segregated portfolios: North America Opportunity Master SP, Diversified Corporate Lending Master SP, Payment Processing Master SP, Mezzanine Master SP and any other segregated portfolio of the Company (**Segregated Portfolios**).

5. The JOLs are sanctioned to exercise the following powers outlined in Part One of the Third Schedule of the Companies Act without further order of the Court:

    (a) The power to bring or defend any action or other legal proceeding in the name and on behalf of the Company.

    (b) The power to make a compromise or an arrangement with creditors or persons claiming to be creditors or who have or allege the existence of a claim against the Company, whether present or future, actual or contingent, or ascertained or not.

    (c) The power to compromise calls and liabilities for calls, debts, and liabilities capable of resulting in debts and claims, present or future, actual or contingent, or ascertained or not, subsisting or supposed to subsist between the Company and any person and all questions relating to or affecting the assets or the liquidation of the Company, on such terms as may be agreed, and take security for the discharge of any such call, debt, liability, or claim, and give a complete discharge.

    (d) The power to sell or otherwise dispose of the property of the Company and its Segregated Portfolios.

(e)     The power to engage staff (whether or not as employees of the Company) to assist the JOLs in the performance of their functions.

(f)     The power to engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions, within and outside of the Cayman Islands, and on such terms as the JOLs think fit, and to remunerate them out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

6.     The JOLs are additionally empowered to exercise the following powers without further order of the Court:

(a)     The JOLs are authorised to take any action as may be necessary or desirable to obtain recognition of the official liquidation and their appointment as JOLs in the United States of America or any other relevant jurisdiction, together with such other relief as the JOLs deem necessary for the proper exercise of their functions in that jurisdiction.

(b)     The power to control and otherwise deal with all existing bank accounts in the name of the Company and its Segregated Portfolios and to open new bank accounts in the name of the Company.

(c)     The power to appoint an agent to do anything the JOLs cannot do.

(d)     The power to change the registered office of the Company.

7.     The JOLs may exercise the powers granted to them within and outside of the Cayman Islands.

8.     No suit, action or other proceeding may be proceeded with or commenced against the Company except with the leave of the Court and subject to such terms as the Court may impose.

9.     No disposition of the Company or its Segregated Portfolio's property by, or with the authority of, the JOLs in carrying out their functions and exercising their powers under this Order shall be voided under s 99 of the Companies Act.

10.     The JOLs are at liberty to apply generally.

11.     JVLs' costs and expenses of this Petition shall be paid out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

12. The hearing of the Petition and Summons for Directions dated 20 November 2023 set down for 21 February 2024 at 9 am is vacated with appearances excused.

**DATED** the 4th day of January 2024

**FILED** the 5th day of January 2024

_____

**THE HONOURABLE MR JUSTICE RAJ PARKER**
**JUDGE OF THE GRAND COURT**

**THIS ORDER** was issued by Dentons, attorneys for the JVLs, whose address for service is Dentons, Floor Two, One Capital Place, Shedden Road, P.O. Box 10190, Grand Cayman KY1-1002 Cayman Islands.

Digitally signed by Advance Performance Exponent Inc
Date: 2024.01.05 11:09:00 -05:00
Reason: Apex Certified
Location: Apex



Certified to be a true and correct copy
of the original
Dated this 3rd day of June 2024.

Karen Armstrong
Notary Public in and for the Cayman Islands
My commission expires January 31st, 2025.

**IN THE GRAND COURT OF THE CAYMAN ISLANDS**

**FINANCIAL SERVICES DIVISION**

**FSD CAUSE NO: 341 OF 2023 (RPJ)**

**IN THE MATTER OF SECTIONS 124 AND 131 OF THE COMPANIES ACT (2023 REVISION)**

**AND IN THE MATTER OF CAYMAN INVESTMENT FUNDS SPC (IN VOLUNTARY LIQUIDATION)**

**THE HONOURABLE MR JUSTICE RAJ PARKER**
**IN CHAMBERS**
**4 JANUARY 2024**

---

### SUPERVISION ORDER

---

**UPON** the application of Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands as Joint Voluntary Liquidators (**JVLs**) of Cayman Investment Funds SPC (in voluntary liquidation) (**Company**) by the JVLs' Petition dated 20 November 2023 for an order that the liquidation of the Company continue under the supervision of the Court.

**AND UPON** the Court being satisfied that the application may be determined on the papers without an oral hearing.

**AND UPON** reading the verifying affirmations of Samuel Cole dated 20 November 2023 and Mitchell Mansfield dated 14 December 2023 and the exhibits exhibited thereto.

**AND UPON** reading the written submissions filed by counsel for the JVLs.



**AND UPON** the Court being satisfied that the JVLs are qualified insolvency practitioners in terms of section 89 of the Companies Act (2023 Revision) (**Companies Act**) and as prescribed by regulation 4 of the Insolvency Practitioners Regulations (2023 Consolidation).

**IT IS ORDERED THAT:**

1.    The liquidation of the Company be continued under the supervision of the Court.

2.    Mitchell Mansfield and Samuel Cole of Kroll (Cayman) Limited of Third Floor, 90 North Church Street, Grand Cayman, Cayman Islands, be appointed as Joint Official Liquidators (**JOLs**) of the Company with the power to act jointly and severally.

3.    The JOLs are not required to provide security for their appointment.

4.    The JOLs are authorised to take any action they consider necessary or desirable in connection with the liquidation and winding up of affairs in the Cayman Islands or elsewhere of the Company and its segregated portfolios: North America Opportunity SP, Diversified Corporate Lending SP, Payment Processing SP, Mezzanine SP and any other segregated portfolio of the Company (**Segregated Portfolios**).

5.    The JOLs are sanctioned to exercise the following powers outlined in Part One of the Third Schedule of the Companies Act without further order of the Court:

    (a)    The power to bring or defend any action or other legal proceeding in the name and on behalf of the Company.

    (b)    The power to make a compromise or an arrangement with creditors or persons claiming to be creditors or who have or allege the existence of a claim against the Company, whether present or future, actual or contingent, or ascertained or not.

    (c)    The power to compromise calls and liabilities for calls, debts, and liabilities capable of resulting in debts and claims, present or future, actual or contingent, or ascertained or not, subsisting or supposed to subsist between the Company and any person and all questions relating to or affecting the assets or the liquidation of the Company, on such terms as may be agreed, and take security for the discharge of any such call, debt, liability, or claim, and give a complete discharge.

    (d)    The power to sell or otherwise dispose of the property of the Company and its Segregated Portfolios.



(e)    The power to engage staff (whether or not as employees of the Company) to assist the JOLs in the performance of their functions.

(f)    The power to engage attorneys and other professionally qualified persons to assist the JOLs in the performance of their functions, within and outside of the Cayman Islands, and on such terms as the JOLs think fit, and to remunerate them out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

6.    The JOLs are additionally empowered to exercise the following powers without further order of the Court:

(a)    The JOLs are authorised to take any action as may be necessary or desirable to obtain recognition of the official liquidation and their appointment as JOLs in the United States of America or any other relevant jurisdiction, together with such other relief as the JOLs deem necessary for the proper exercise of their functions in that jurisdiction.

(b)    The power to control and otherwise deal with all existing bank accounts in the name of the Company and its Segregated Portfolios and to open new bank accounts in the name of the Company.

(c)    The power to appoint an agent to do anything the JOLs cannot do.

(d)    The power to change the registered office of the Company.

7.    The JOLs may exercise the powers granted to them within and outside of the Cayman Islands.

8.    No suit, action or other proceeding may be proceeded with or commenced against the Company except with the leave of the Court and subject to such terms as the Court may impose.

9.    No disposition of the Company or its Segregated Portfolio's property by, or with the authority of, the JOLs in carrying out their functions and exercising their powers under this Order shall be voided under s 99 of the Companies Act.

10.    The JOLs are at liberty to apply generally.

11.    JVLs' costs and expenses of this Petition shall be paid out of the assets of the Company and its Segregated Portfolios as an expense of the official liquidation.

12.   The hearing of the Petition and Summons for Directions dated 20 November 2023 set down for 21 February 2024 at 9 am is vacated with appearances excused.

13.   This proceeding is to be treated as consolidated with *In the matter of Cayman Investment Funds Master SPC* (FSD Cause No 340 of 2023) for the purposes of assessing fees payable under the Court Fees Rules (2021 Revision) (**Court Fees Rules**), and the filing fee paid in respect of the Petition in this proceeding is to be refunded to the JVLs pursuant to s 6(5) of the Court Fees Rules.

**DATED** the 4th day of January 2024

**FILED** the 5th day of January 2024

_____

**THE HONOURABLE MR JUSTICE RAJ PARKER**
**JUDGE OF THE GRAND COURT**

**THIS ORDER** was issued by Dentons, attorneys for the JVLs, whose address for service is Dentons, Floor Two, One Capital Place, Shedden Road, P.O. Box 10190, Grand Cayman KY1-1002 Cayman Islands.

<u>**Exhibit B**</u>

**Facility Agreement**



# MASTER LOAN AGREEMENT

## MLA - NAO E1-091118 USD

### PREAMBLE

**THE MASTER LOAN AGREEMENT** with the following number and identification code NAO E1-091118 USD between PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER SP and TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS) and regulates the terms and conditions outlined below by and between:

(A)  On one hand: PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER, with registered office at 103 South Church Street, PO Box 10240, KY1-1002, Grand Cayman, Cayman Island, represented by its Investment Manager and Directors, hereafter referred to as the "LENDER",

(B)  On the other hand: TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS), headquartered at 1111 Kane Concourse, 518 Bay Harbor Island, 33154 Florida, USA with the following FEI Number: 65-0542741 and Florida Document Number of P94000091060, hereafter referred to as "BORROWER".

**WHEREAS** the Lender and the Borrower have agreed that the Lender will finance the transactions in loan receivables or other financing instruments or any profit participation arrangement directly or indirectly executed by the Borrower in the aggregate amount specified in Section 2 pursuant to the terms and conditions of this Agreement. The Lender has the right to send any partial amount at any time convenient for the Lender to the account of the Borrower;

**WHEREAS** in consideration for this Loan, the Borrower will ensure the delivery to the Lender of unencumbered, fully perfected, third party security interests in accordance with the provisions of Section 9 of this Agreement;

The Lender and the Borrower are hereinafter referred to together as the "Parties" and each individually as a "Party".



**NOW THEREFORE,** the parties hereto agree as follows:

## Section 1 – Definitions

Wherever used in this Agreement, the terms below shall have the following meanings;

a) **"Confidential Information"** means any information that the Borrower has furnished or will furnish to the Lender according to this Agreement, but does not include any such information that is or becomes generally available to the public (other than as a result of a breach by the Lender of its obligation hereunder) or that is or becomes available to the Lender from a source other than the Borrower;

b) **"Effective Date"** is when the money is received by the borrower;

c) **"USD"** shall mean the lawful currency of the United States of America;

d) **"Loan" or "Master Loan Agreement"** shall have the meaning ascribed to it in Section 2 hereof;

e) **"Payment Date"** means any day and date between date of signing this document until the loan is fully repaid after the Effective Date upon which the Loan (together with accrued interest) shall have been repaid in full by the Borrower;

f) **"Term"** means the seven (7) year anniversary of the date which this contract is executed;

g) **"Extensions and rollover of the Master Loan Agreement"** means the express renewal of the Master Loan Agreement for an additional period as of the penultimate date of the Term by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

Words importing the singular include the plural and vice versa and the neutral gender shall include the feminine and masculine genders.

## Section 2 - Agreement for the Loan

Subject to the terms and conditions of this Agreement the Lender agrees to provide financing to the Borrower and the Borrower agrees to become the debtor of the Lender, for an aggregate amount of USD twenty million dollars (USD 20,000,000). This amount can be made available by the Lender to the Borrower in one or multiple transfers to either of the accounts indicated in this Master Loan Agreement, at the sole discretion of the Lender.



## Section 3 - Interest Rate

Any amount received under the Master Loan Agreement shall bear annual interest in USD of seventeen percentage points (17.0%) until the Loan is either repaid, withdrawn or extended by the respective Parties prior to such date. For the sake of clarity, this Interest Rate shall be calculated as a simple annual interest rate calculated over a 360-day annual year basis.

## Section 4 - Disbursement of the Loan and Banking Details

a) **General Overview**:

Disbursement of each Loan under the Master Loan Agreement will be executed by the Lender from the same bank account that the interest and principal should be repaid to by the Borrower. To effectuate the disbursement of any Loan, a request for funding under the terms of this Agreement must be completed by the Borrower through the submission of a Notice of Drawdown, as included hereto in Exhibit A, to Lender.

The Lender holds its bank account at Canadian Imperial Bank of Commerce in Illinois, USA. *See more information below.*

The Borrower holds its accounts at JPMorgan Chase Bank in New York, USA. *See more information below.*

### Lender

*Any transfers from the Borrower to the Lender should be paid to the following account*:

**Bank Name**: CIBC Bank USA
**SWIFT**: PVTBUS44
**ABA**: 071006486
**Favor of ("F/O")**: Prudent Cayman Investment Funds Master SPC - North American Opportunity Master SP
**Account ("A/C")**: ▮▮▮01

### Borrower

*Any transfers from the Lender to the Borrower should be paid to the following account*:

**Bank Name**: Chase
**SWIFT**: CHASUS33
**ABA**: 021000021
**Favor of ("F/O")**: Alliance Metals
**Account ("A/C")**: ▮▮▮53

This bank account is hereinafter referred to as the "Borrower's Bank Account".



b) **Additional Considerations**:

The Parties hereto acknowledge and agree that any Loan made under this Agreement will be funded into the Borrower's Bank Account, or a the 'lock box' account controlled by the Lender, per Section 4(a) hereto. Thereafter, the funds will be forwarded from the Borrower's Bank Account to another, to be determined, bank account provided by the Borrower at the sole discretion of the Lender (the "Operational Account"). It is duly confirmed and accepted by the Parties that the Lender shall have access to, view, review and control operational and cash disbursement control of the Borrower's Bank Account and the Operational Accounts which Loan proceeds are released to.

If the Lender reasonably deems that there is any breach of the provisions provided herein, it is agreed that the Lender will notify the Borrower and the Borrower will have 1 (one) business day to either (i) explain the circumstances and provide evidence supporting such claims or (ii) cure the breach to the satisfaction of the Lender. If the Borrower does not comply with this provision, the Lender has the right to find the Borrower in default and call or withdraw the funds in Borrower's Bank Account and/or the Operational Account to the Lender's account.

The Borrower will irrevocably assign and pledge to the Lender the receivables referenced in the Pledge Addendum included herein. Please see the Pledge Addendum and Appendix I thereto governing the Borrower's irrevocable pledge of the subject collateral for a given Loan.

### Section 5 - Payment of the Loan

a) **Interest Payment**: The payment of interest shall occur on a "Interest Payment Date, with such term defined as the date when the Borrower shall pay the Lender the Interest owed as per specific request at such time by the Lender. The Lender may request a partial or full payment of Interest owed up to such Interest Payment Date as determined by the Lender as per the terms of this Loan Agreement, payable by the Borrower in either one or a combination of the following two ways:

    i. Upon Receipt of a Call Notice: The Borrower shall ensure each payment will take place within 72 hours after receiving a payment demand for the Interest amount due from the Lender. Such payments shall be made to the account indicated by the Lender in this document, or

    ii. Lender's Remittance from Borrower's Bank Account: The Lender may, in its sole discretion, release a payment in the amount of the interest amount due at any time from the Borrower's Bank Account to the bank account of the Lender.

b) **Principal Payment**: The payment of principal shall occur on a "Principal Payment Date", with such term defined as the date when the Borrower shall pay the Lender the Principal owed as per specific request at such time by the Lender. The Borrower may prepay and the Lender may request a partial or full repayment of the Loan in accordance to the Loan Agreement, as early as the Borrower or Lender chooses. The Lender should be given advance notice of at least seven (7) Business Days if the Borrower decides to



repay any portion of the principal amount earlier then at the end of the Term. The Loan is fully repayable at the end of the Term unless the Lender gives the Borrower a written notice ten (10) days before the end of the Term of an extension to the Term, at the Lender's sole discretion. The Loan can then be renewed for a period to be agreed upon in writing, with the same terms and conditions as in this loan agreement.

Any principal advanced hereunder shall be payable by the Borrower in either one or a combination of the following two ways:

    i. Upon Receipt of a Call Notice: The Borrower should be informed ten (10) days prior of any such request of repayment of any part of the principal amount and the associated interest linked to this specific withdrawal request. The Borrower shall upon receiving such repayment request initiate a transfer within ten (10) days following the date of the withdrawal request. Such payments should be made to the account indicated by the Lender in this document, or

    ii. Lender's Remittance from Borrower's Bank Account: The Lender may, in its sole discretion, release a payment in the amount of the Principal amount due at any time from the Borrower's Bank Account to the bank account of the Lender.

c) All sums payable to the Lender hereunder shall be paid free and clear of any withholding taxes.

d) The payment obligations assumed herein by the Borrower with respect to the repayment of Interest and Principal to the Lender, shall at all times be the most senior payment obligation of the Borrower, unless this is explicitly waived in writing by the Lender.

e) In order to effectuate a request for repayment of any outstanding amounts under this Agreement, the Lender will cause to be delivered a Call Notice Request, as included hereto in Exhibit B, to the Borrower. The repayment of any amounts considered under the Call Notice Request shall be subject to the provisions contained within this Section.

## Section 6 - Duration

This agreement shall enter into force on the date hereof (the "Execution Date") and is concluded for a fixed period ending at the 7-year anniversary of the Execution Date. The Agreement may be renewed from time to time by an extension of the Master Loan Agreement.

Each extension of the Master Loan Agreement shall be executed by a written confirmation from the Lender to the Borrower executed 10 days before the end of the Term.

## Section 7 – Representations and Warranties

a) Both of the Parties hereto represent and warrant to the other party as follows:

    (i) Both parties have the full power and authority and have taken all action necessary to execute and deliver this Agreement and to fulfil their obligations hereunder, and to consummate the transactions contemplated by this Agreement;



    (ii)    The making and performance of this Agreement and all documents executed and delivered and required to be executed and delivered hereunder do not and will not violate any law or regulation of the jurisdiction of its incorporation or any other law or regulation applicable to either of them;

    (iii)    This Agreement has been duly executed and delivered by either party and constitutes their legal, valid and binding obligation, enforceable in accordance with its terms;

    (iv)    All consents, licenses, approvals, authorizations, registrations (including filling this agreement with any required governmental agencies), filings, opinions and declarations from or with any agency, department, administrative authority, statutory corporation, or judicial entity necessary for the validity or enforceability of their respective obligations under this Agreement have been obtained and no governmental authorizations other than any already obtained are required in connection with the execution, delivery and performance of this Agreement.

b)    The Borrower further represents and warrants to the Lender that on and as of the Effective Date the Borrower is not aware of any defense to payment arising out of any act or omission of the Borrower, or any right of offset or counterclaim against the Borrower.

## Section 8 - Events of Default

8.1

a) In the event:

    (i)    The Borrower fails to pay any sum due from it hereunder at the time, in the currency and in the manner specified herein; or

    (ii)    Any representation or statement made by the Borrower in this Agreement or any notice or other document, certificate, or statement delivered by it pursuant hereto or in connection herewith is or proves to have been incorrect or misleading when made; or

    (iii)    The Borrower fails duly to perform or comply with any of the obligations expressed to be assumed by it in this Agreement; or

    (iv)    The Borrower fails duly to perform or comply with any other obligation expressed to be assumed by them in this Agreement and such failure is not remedied within seven (7) business days after the Lender has given notice thereof to the Borrower; or

    (v)    Any indebtedness of the Borrower is not paid when due, or any indebtedness is declared to be or otherwise becomes due and payable prior to its specified maturity or any creditor of the Borrower becomes entitled to declare any indebtedness due and payable to its specified maturity; or



(vi)    The Borrower is unable to pay its debts as they fall due, commences negotiations with any one or more creditors with a view to the general readjustment or rescheduling of its indebtedness or makes a general assignment for the benefit of or a composition or arrangement with its creditors; or

(vii)   The Borrower is declared bankrupt; or

(viii)  The Borrower repudiates this Agreement or does or causes to be done any act or thing evidencing an intention to repudiate this Agreement.

b) Then, the Lender may:

(i)     Declare the Loan to be immediately due and payable (where upon the same shall become so payable together with interest accrued due thereon), and/or

(ii)    Declare that the Loan shall be cancelled, whereupon the same shall be cancelled.

8.2     If, pursuant to Section 8.1, the Lender declares the Loan to be due and payable on the demand of the Lender, then, and at any time thereafter, the Lender may, by written notice to the Borrower, call for repayment of the Loan on such date as the Lender may specify in such notice whereupon the same shall become due and payable on such date together with any other sums then owed by the Borrower hereunder. The Lender also has priority over equity investors, any other creditors, or any other member of the capital structure, in any future bankruptcy process in regards to realizing the repayment of the amounts owed to the Lender in accordance to the terms of this agreement.

## Section 9 – Pledge of Assets

a)  The obligation of the Borrower to repay any Loan to the Lender under this Agreement shall be guaranteed by the pledge of any and all other assets held by the Borrower.

b)  The Borrower shall provide a specific security interest in a pool of receivables (the "Collateral Pool") which shall be pledged, free and clear of any incumbrances, to the benefit of Lender. If any advance rate concepts are decided to be employed hereunder, such advance rates shall be calculated as a percentage (%) of the face-value of the Collateral Pool and may be determined at the sole discretion of the Lender. However, this shall be communicated to the Borrower, in writing, prior to the release of any monies.

c)  The Borrower hereby undertakes and commits to executing the necessary registrations, signatures and actions within United States, as to make any and all such pledges fully valid and enforceable against the Borrower, upon request in writing by the Lender, within the timeframe required by the Lender in said written request.

d)  Please refer to the Pledge Addendum herein.



### Section 10 - Assignment

This Agreement shall bind and inure to the benefit of the respective successors of the Parties hereto, except that the Borrower may not assign or otherwise transfer all or any parts of its rights or obligations under this Agreement without the prior written consent of the Lender.

### Section 11 – Remedies and Waivers, Partial Invalidity

No failure to exercise, nor any delay in exercising, any right or remedy under this agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy prevent any further or other exercise thereof or the exercise of any other right or remedy. The rights and remedies provided herein are cumulative and not exclusive of any rights or remedies provided by law.

If, at any time, any provision of this agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions thereof, nor the legality, validity or enforceability of such provision under the law of any other jurisdiction, shall in any way be affected or impaired thereby.

### Section 12 – Taxes and other deductions

All sums payable by the Borrower under this Agreement shall be paid free and clear of taxes (except to the extent required by the law) without any deduction or withholding for or on account of any present or future tax duties, fees or charges of any nature now or hereafter imposed by the United States or any other country, any political subdivision or taxing authority thereof or any federation or organization.

### Section 13 - Counterparts

This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same agreement.

### Section 14 - Applicable Law

This Agreement is exclusively subject to the laws of the Cayman Islands.

### Section 15 - Jurisdiction

Exclusive jurisdiction is given to the Courts of the state of Florida and any claims arising under the present Agreement must be submitted to the Date County.

### Section 16 – Notice

All notices, advice, statements, requests, demands and other communications ("**Notices**") under this Agreement shall be made in the English language and shall be given or made to the other Party in writing or- but then, except for routine notices, to be confirmed in writing - by email and shall be addressed to them at the addresses included in the Preamble.



**IN WITNESS WHEREOF** the Parties to this Agreement have caused this Agreement to be duly executed and signed, in as many original copies as there are Parties to this Agreement, each Party declaring having received one original copy.

### The Lender

**Name**: Dennis Klemming
**Capacity**: Board Member

**By**:_____
**Date**:

**Name**: Giovanni Cataldi
**Capacity**: Board Member

**By**:_____
**Date**:

### The Borrower

**Name**: Jacob Gitman
**Capacity**: President

**By**:_____
**Date**: 09. 11. 2018

**Name**: Larry Gitman
**Capacity**: Manager

**By**:_____
**Date**: 09. 11. 2018



## Exhibit A

## NOTICE OF DRAWDOWN

**Prudent Cayman Investment Funds Master SPC - North American Opportunity Master SP**
103 South Church Street, PO Box 10240,
KY1-1002, Grand Cayman,
Cayman Island

Attn.: Mr. Dennis Klemming

Ref: Notice of Drawdown under the Master Loan Agreement

Dear Sir,

1.  We refer to Section 4 of the Master Loan Agreement (the "Agreement"), executed by and between the Borrower and Lender on 11/14/2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2. This is to formally request a Loan to be effected under the terms of the Agreement, as follows:

| | | | | |
|---|---|---|---|---|
| **Beneficiary Bank:** | Chase | **Amount:** | |
| **ABA** | 267084131 | **Currency:** | USD |
| **Beneficiary Bank Swift:** | CHASUS33 | **Date of Drawdown:** | |
| **Beneficiary Name:** | Alliance Metals | **MLA Maturity Date:** | 11/14/2025 |
| **Beneficiary Account Number:** | ▉53 | **Interest:** | 17.00% p.a. |

3. This Loan shall be repaid in accordance with the terms of this Notice of Drawdown and the Agreement, and we hereby irrevocably confirm our interest in receiving such funds at your earliest convenience.

### The Lender

**Name**: Dennis Klemming                          **By**:_____

**Capacity**: Board Member                          **Date**:


**Name**: Giovanni Cataldi                          **By**:_____

**Capacity**: Board Member                          **Date**:





**The Borrower**

**Name**: Jacob Gitman

**Capacity**: President

By: _____

Date: 09. 11. 2018

**Name**: Larry Gitman

**Capacity**: Manager

By: _____

Date: 09. 11. 2018



**Exhibit B**

## CALL NOTICE REQUEST FORM

**TECHNOCON INTERNATIONAL INC (D/B/A ALLIANCE METALS)**
1111 Kane Concourse, Bay Harbor Island, 33154
Florida, USA

Attn.: Mr. Jacob Gitman / Larry Gitman

Ref: <u>Notice of Repayment under the Master Loan Agreement:</u>

Dear Sirs,

1.  We refer to Section 5 of the Agreement, executed by and between executed by and between the Borrower and Lender on 11/14/2018. TERMS DEFINED IN THE AGREEMENT ARE USED HEREIN AS THEREIN DEFINED, UNLESS OTHERWISE DEFINED HEREIN.

2.  This is to formally request a REPAYMENT to be effected under the terms of the Agreement, as follows:

| | | | | |
|---|---|---|---|---|
| **Beneficiary Bank:** | CIBC Bank USA | | **Amount:** | |
| **Beneficiary Bank Swift:** | PVTBUS44 | | **Currency:** | |
| **Beneficiary Name:** | Prudent Cayman Investment Funds Master SPC - North American Opportunity Master | | **Date of Call Request:** | |
| **Beneficiary Account Number:** | ███01 | | | |

3.  The repayment outlined herein shall be repaid in accordance with the terms of this Call Notice Request Form and the Agreement, and by singing hereunder, the Lender irrevocably confirm its interest in receiving such funds per the allotted time in this Agreement.

    **The Lender**

    **Name**: Dennis Klemming             **By**:_____

    **Capacity**: Board Member          **Date**:

    **Name**: Giovanni Cataldi             **By**:_____

    **Capacity**: Board Member          **Date**:





**Exhibit C**

## Pledge Addendum for MLA-NAO E1-091118 USD

*by and between*

Technocon International Inc. (D/B/A Alliance Metals)

*and*

Prudent Cayman Investment Funds Master SPC – North American Opportunity Master

As security for the obligations created under this Master Loan Agreement, Technocon International Inc (D/B/A Alliance Metals) (the "**Assignor**") hereby assigns and pledges to the Prudent Cayman Investment Funds Master – North American Opportunity Master (the "**Assignee**") all of the Assignor's rights, title and interest in the receivables outlined herein and all other proceeds remitted to the beneficiary account of such pledged receivables (jointly defined as "**Assigned Deposits**"), and grants to the Assignee, a security interest therein, and agrees that until satisfaction in full of all obligations, the Assignee shall have and possess the entire right, title and interest in and to the Assigned Deposits. Moreover, in the event the Assignee is not the beneficiary of certain receivables, Assignor gives authority to Assignee to have access to view, review and control operational and cash disbursement control of the Assignor's Assigned Deposits.

The Assignor agrees that the Assignee is hereby authorized to deduct directly from the Assigned Deposits all amounts due to the Assignee under this Pledge Addendum without any prior notice or any authorization from the Assignor.

The Assignee is hereby authorized, but not obligated, to file UCC financial statements and amendments thereto and continuation thereof, and any other related filings, in the name of the Assignor without any signature of Assignor to further evidence the Assignee's interest in the Assigned Deposits, to the extent deemed necessary or appropriate by Assignee. The parties agree that the Assignor shall at all times be deemed the first priority security interest holder of the correlative specific receivables as outlined in the Appendix included herein.

The Assignor surrenders all authority to withdraw, disburse or receive the benefits of the Assigned Deposits, unless otherwise stated in writing by the Assignee. This Pledge Addendum is irrevocable so long as any Obligations are outstanding and shall terminate only upon the Assignee's acknowledgement in writing that this Pledge Addendum has terminated.

Except as expressly provided elsewhere in this Pledge Addendum, all proceeds received by Assignor in respect of including, but not limited to, any insurance money collected from a third-party payor upon all or any part of the Assigned Deposits shall be applied in full or in part by the Assignee against, the amount obligated to pay in the following order of priority:

> **first**, to the amount received by Assignor from Assignee plus interest;
> **second**, to the extent of any excess of such proceeds, to the payment of all other money lent for the ratable benefit of the Assignee; and
> **third**, to the extent of any excess of such proceeds, to the payment to or upon the order of such Assignor or to whosoever may be lawfully entitled to receive the same or as a court of competent jurisdiction may direct.



**The Lender**

**Name**: Dennis Klemming                     **By**: _____

**Capacity**: Board Member                     **Date**:


**Name**: Giovanni Cataldi                      **By**: _____

**Capacity**: Board Member                     **Date**:


**The Borrower**

**Name**: Jacob Gitman                         **By**: _____

**Capacity**: President                         **Date**: 09/11/2018


**Name**: Larry Gitman                          **By**: _____

**Capacity**: Manager                          **Date**: 09. 11. 2018



**Appendix I**

## Exhibit C

**November 6, 2023 Correspondence**



**By email (dennis@prudentgroup.us) only**

6 November 2023

Dennis Klemming
1800 Purdy Avenue Apt 2007
Miami Beach, Florida
United States of America 33139-1492

Dear Sir,

**Cayman Investment Funds Master SPC (In Voluntary Liquidation) - North America Opportunities Master SP; Diversified Corporate Lending Master SP & Payment Processing Master SP**
**Cayman Investment Funds SPC (In Voluntary Liquidation) - North America Opportunities SP; Diversified Corporate Lending SP &Payment Processing SP**
**(the "Companies")**

Mitchell Mansfield and I were appointed as Joint Voluntary Liquidators ("**Liquidators**") of the Companies pursuant to written resolutions of the sole member of the Companies dated 31 October 2023 ("**Resolutions**"). Please find enclosed a copy of the Resolutions for your records.

Among other things, the responsibilities of the Liquidators include identifying, taking control of and safeguarding the Companies' assets, including its books and records and to carry out such investigations as the Liquidators may consider appropriate. Upon the appointment of the Liquidators, all dealings in the assets of the Companies must be authorised by the Liquidators.

**Duties of Directors**

Your powers as director of the Companies ceased with effect from the commencement of the winding-up. However, your responsibilities and duties remain. All dealings in the affairs and assets of the Companies must now be authorised by one of the Liquidators or their authorised representatives.

You may be called upon from time to time to assist the Liquidators and to provide them with any information that the Liquidators request in relation to the affairs of the Companies. While the Liquidators will try to minimise any inconvenience to you, please appreciate that you have a statutory responsibility to comply with these requests.

**Books and Records**

You are also required to provide the Liquidators with all of the books, papers and records of the Companies that are currently in your custody, control and/or possession including any statutory records such as minute books, share certificates and director and member registries. You must also deliver all property and assets of the Companies that are in your possession to the Liquidators. Alternatively, should you be aware of any property of the Companies that is not in your possession, please let the Liquidators know of its whereabouts at your earliest convenience.

kroll.com    T +1 345 743 8800

Kroll (Cayman) Ltd.
Mail: PO Box 30847, Grand Cayman KY-1204 Cayman Islands
Address: 3rd Floor, 90 North Church Street, George Town, Grand Cayman

If you are not in possession of any of the Companies' property and are unaware of the location of any such property, please provide us with written confirmation in that regard.

**Proof of Debt**

To the extent that you have a claim against one or both of the Companies, please find enclosed a proof of debt form to be completed (outlining the nature and amount of any debt you claim against one or both of the Companies) and returned (with documents supporting your claim) to the Liquidators via email by no later than 5 January 2024 to Jessica Bradbury at jess.bradbury@kroll.com.

Should you have any queries or require further information, please contact me or Jessica Bradbury of this office. Our contact details are set out below:

| **Samuel Cole** | | **Jessica Bradbury** | |
|---|---|---|---|
| Office Direct: | +1 345 743 8814 | Office Direct: | +1 345 623 9907 |
| Mobile: | +1 345 525 2884 | Mobile: | +1 345 526 1114 |
| Email: | sam.cole@kroll.com | Email: | jess.bradbury@kroll.com |

Yours sincerely

Samuel Cole
Joint Voluntary Liquidator
Cayman Investment Funds Master SPC (In Voluntary Liquidation)
Cayman Investment Funds SPC (In Voluntary Liquidation)

*Enclosures:*

    Cayman Investment Funds Master SPC - Unanimous Written Resolutions of the Sole Shareholder dated 31 October 2023
    Cayman Investment Funds SPC - Unanimous Written Resolutions of the Sole Shareholder dated 31 October 2023
    Proof of Debt Form

## Exhibit D

**Intercreditor Agreement**

# INTERCREDITOR AGREEMENT

This INTERCREDITOR AGREEMENT, dated as of November 9, 2023 (this "Agreement"), is among PRUDENT CAYMAN INVESTMENT FUNDS MASTER SPC - NORTH AMERICAN OPPORTUNITY MASTER SP, represented by its Investment Manager and Directors (the "Subordinating Creditor"), Technocon International Inc., a Florida Corporation, and its subsidiary, Alliance Metals LLC,  a Florida limited liability company (collectively,  the " Debtor"), and Truewind Management LLC, a  Florida limited liability company (the "Senior Creditor").

## RECITALS

A. Whereas, the Senior Creditor has acquired a security interest in assets of the Debtor in which the Subordinating Creditor has also  an interest, including **but not limited to** the Senior Creditor Collateral as defined in this Agreement and identified in the Loan Agreement between Truewind Management LLC and Alliance Metals LLC  dated as of November 8, 2023 (as amended, modified, supplemented, or restated and in effect from time to time, the "**Senior Creditor Loan Agreement**").

B. Whereas, Debtor and Subordinating Creditor entered to the Master Loan Agreement dated as of September 11, 2018 (as amended, modified, supplemented, or restated and in effect from time to time, the "**Subordinating Creditor Loan Agreement**") by and among Technocon International Inc and its affiliates and subsidiaries (including Alliance Metals LLC as its subsidiary) pursuant to which such Subordinating Creditor has  agreed to extend credit to the Debtor on the terms and subject to the conditions specified in the Subordinating Creditor Loan Agreement. All of the Debtor's obligations under the Subordinating Creditor Loan Agreement are secured by liens on and security interests in all of the Debtor's now-existing and hereafter acquired assets.

C. The Creditors are executing this Agreement to set forth their lien priorities with respect to the Senior Creditor Collateral.

D. To induce Senior Creditor to extend financial accommodations to the Debtor, the Subordinating Creditor has agreed to subordinate in favor of Senior Creditor its security interest in the Senior Creditor Collateral.

NOW, THEREFORE, in consideration of the premises, and intending to be legally bound hereby, the Creditors hereby agree as follows:

## AGREEMENT

1. **DEFINITIONS.** The following terms used herein shall have the following meaning. All capitalized terms not herein defined shall have the meaning set forth in the Uniform Commercial Code, as enacted in the Chosen State on the date hereof:

1.1 "**Bankruptcy Code**" – Title 11 of the United States Code.

1

1.2 "**Chosen State**" - Florida

1.3 "**Creditors**" –The Subordinating Creditor and the Senior Creditor.

1.4 "**Debtor**" – See preamble.

1.5 "**Paid in Full**"  - means, with respect to any obligations of the Debtor pursuant to any loan agreement or similar agreement providing for the extension of credit, that: (a) all of such obligations (other than contingent obligations or indemnification obligations for which no underlying claim has been asserted) have been paid, performed, or discharged in full (with all obligations consisting of monetary or payment obligations having been paid in full in cash), (b) no Person has any further right to obtain any loans, letters of credit, or other extensions of credit under the applicable loan documents, and (c) any and all letters of credit or similar instruments issued under such loan documents have been cancelled and returned (or backed by stand-by guarantees or cash collateralized) in accordance with the terms of such loan documents.

1.5 "**Party**" – Each of the Subordinating Creditor, the Debtor, and the Senior Creditor.

1.6 "**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, governmental authority, or other entity.

1.6 "**Secondary Collateral**" – Collateral of a Subordinating Creditor holding a security interest which is inferior to the priority of the Senior Creditor.

1.7 "**Senior Creditor**" – See preamble.

1.8 "**Senior Creditor Collateral**" means any and all present and future right, title, and interest of the Debtor in and to the following, whether now owned or hereafter acquired, existing or arising, and wherever located:

> (a) Debtor's Accounts Receivables that are specifically pledged under the Senior Creditor Loan Agreement as evidenced by the applicable promissory notes.

> (b) Insurance proceeds related to the Accounts Receivables that are specifically pledged under the Senior Creditor Loan Agreement as evidenced by the applicable promissory notes;

> (c) DACA deposit accounts maintained exclusively for identifiable proceeds of the foregoing Accounts Receivables that are specifically pledged under the Senior Creditor Loan Agreement as evidenced by the applicable promissory notes;

> (d) Proceeds from the Debtor's accounts receivable that are not part of the pledged Accounts Receivable in the amount not exceeding twenty percent (20%) of then funds lent to the Debtor under the Senior Creditor Loan Agreement . For the avoidance of doubt, this subsection (d) will be leveraged only in the event of Debtor's breach of its Senior Creditor Obligations under any of the applicable Promissory Notes (as defined in the Senior

2

Creditor Loan Agreement) and in the event the proceeds identified in Section 1.8 (a), (b) and (c), at Senior Creditor's view, are not sufficient for the Debtor to satisfy Senior Creditor Obligations. In addition, if Debtor has Paid in Full to cover its Senior Creditor Obligations under certain Accounts Receivable pledged as part of the Senior Creditor Collateral and should the Senior Creditor receive proceeds from the insurance company as a result of non-payment for those Accounts Receivable by the Debtor's customer, then the Senior Creditor will remit the received insurance proceeds to the Debtor within five (5) business days from its receipt.

Terms used in the foregoing are defined in the Senior Creditor Loan Agreement between Senior Creditor and Debtor. Those, which are not otherwise defined in this Agreement have the meanings specified in the UCC.

1.9 "**Senior Creditor Obligations**" - Obligations of the Debtor to the Senior Creditor secured by the Senior Creditor Collateral under the Senior Creditor Loan Agreement.

1.10 "**Subordinating Creditor**" – means the entity listed as a signatory to this Agreement and any and all related entities of the Subordinated Creditor whether connected legally or through their Investment Manager and Directors as defined in the applicable Subordinated Creditor Agreement and that extended credit facilities to the Debtor whether prior to the date of this Agreement or will extend such credit facilities in the future.

1.11 "**Subordinating Creditor Agreements**" – All agreements now or hereafter entered into between Subordinating Creditor and Debtor which create an obligation which is secured by the Senior Creditor Collateral.

1.12 "**Subordinating Creditor Obligations**" – Indebtedness owed by the Debtor to the Subordinating Creditor secured by Senior Creditor Collateral.

## 2. **PRIORITY.**

2.1 Notwithstanding the terms or provisions of any agreement or arrangement which either Creditor may now or hereafter have with the Debtor or any rule of law, and irrespective of the time, order, or method of attachment or perfection of any security interest or the recordation or other filing in any public record of any financing statement, the Senior Creditor Obligations and any security interests in the Senior Creditor Collateral now or hereafter held by the Senior Creditor, whether or not perfected, are and shall remain senior to:

2.1.1 The Subordinating Creditor Obligations;

2.1.2 Any lien therein now or hereafter held by the Subordinating Creditor relating to the assets in which a Senior Creditor holds a lien.

## 3. **ENFORCEMENT OF SECURITY INTEREST.**

3

3.1 The Subordinating Creditor shall have no right to take any action with respect to its Secondary Collateral, whether by judicial or non-judicial foreclosure, recordation or enforcement of mechanics liens, notification to the Debtor's Account Debtors, the seeking of the appointment of a receiver for any portion of the Debtor's assets, setoff, or otherwise, unless and until all Senior Creditor Obligations have been Paid in Full.

3.2 If the Subordinating Creditor, in contravention of the terms of this Agreement, shall commence, prosecute, or participate in any suit, action, or proceeding against the Debtor or initiate any foreclosure sale or proceeding or any other action to enforce its lien on any of the Senior Creditor Collateral, then the Debtor may interpose as a defense or plead the making of this Agreement, and the Senior Creditor may intervene and interpose such defense or plea in its name or in the name of the Debtor.

## 4. **PROCEEDS OF COLLATERAL.**

4.1 All proceeds of Senior Creditor Collateral (including any interest earned thereon) resulting from any enforcement action, and whether or not pursuant to an insolvency proceeding, shall be distributed as follows: first, to the Senior Creditor to be applied in accordance with the Senior Creditor Loan Agreement until the Senior Creditor Obligations are Paid in Full; second, to the Subordinating Creditor to be applied in accordance with the Subordinating Creditor Loan Agreement until the Subordinating Creditor Obligations are Paid in Full; and thirdly, to the Debtor, or as a court of competent jurisdiction may direct.

4.2 Until the Senior Creditor Obligations shall have been Paid in Full, Subordinating Creditor may not accept Senior Creditor Collateral, including proceeds in satisfaction, in whole or in part, of the Subordinating Creditor Obligations in violation of this Section 4.1. Any Senior Creditor Collateral proceeds received by the Subordinating Creditor that is not permitted to be received pursuant to the preceding sentence shall be segregated and held in trust and promptly turned over to the Senior Creditor to be applied in accordance with Section 4.1 in the same form as received, with any necessary endorsements. Upon the turnover of such Senior Creditor Collateral proceeds as contemplated by the immediately preceding sentence, the Subordinating Creditor Obligations purported to be satisfied by the payment of such Senior Creditor Collateral proceeds shall be immediately reinstated in full as though such payment had never occurred.

4.3 Any proceeds of Senior Creditor Collateral that are due in accordance with this Section 4 not paid within 15 days of receipt of such proceeds by the Subordinating Creditor shall accrue a late charge at the rate of 18% per annum.

## 5. **SUBORDINATING CREDITOR COVENANTS AND WARRANTIES.**

5.1 The Subordinating Creditor warrants, covenants and represents that it:

5.1.1 Is the owner of the Subordinating Creditor Obligations;

4

5.1.2 Is the Secured Party of record in each UCC Financing Statement listed on the attached Exhibit A.

5.1.3 Will not, at any time while this Agreement is in effect assign any of the Subordinating Creditor Obligations to any Person which does not agree in a writing, satisfactory in form and substance to the Senior Creditor, to be bound by all of the obligations of the Subordinating Creditor hereunder. In the case of any such proposed assignment by the Subordinating Creditor, it will notify the Senior Creditor at least 10 business days prior to the date of any of such assignment.

5.1.4 Waives any rights it may have to claim that the enforceability of this Agreement may be affected by any subsequent modification, release, extension, or other change, material or otherwise, in the Senior Creditor Obligations or the Senior Creditor Collateral.

6. **REMEDY FOR BREACH.**

6.1 Any breach hereof is likely to cause irreparable damage to the aggrieved party. Therefore, the relief to which such party shall be entitled in such event shall include, but not be limited to: judicial relief to prevent a violation of any of the provisions of this Agreement and any other relief to which it may be entitled at law or in equity. Further, it is agreed that any breach of this contract by a Party shall have a 30 day cure period where the Party that is in breach of this contract can rectify any such instances.

7.**AMENDMENT OF SUBORDINATING CREDITOR AGREEMENTS.**

7.1 This Agreement shall be deemed an amendment to all present and future Subordinating Creditor Agreements, which cannot be further amended to affect the rights of Senior Creditor hereunder.

7.2 The consent of Senior Creditor shall not be required for any further amendment of the Subordinating Creditor Agreements as long as they are not in contradiction of the terms agreed in this Agreement.

8. **EFFECT OF BANKRUPTCY.**

8.1 This Agreement shall remain in full force and effect notwithstanding the filing of a petition for relief by or against the Debtor under the Bankruptcy Code and, without limiting the foregoing shall apply with full force and effect with respect to all Senior Creditor Collateral acquired by the Debtor, and obligations incurred by the Debtor to the Senior and Subordinating Creditors, subsequent to the date of any such petition.

8.2 If the Debtor shall become subject to a proceeding under the Bankruptcy Code and if Senior Creditor shall permit the use of cash collateral or provides financing to Debtor under either Section 363 or Section 364 of the Bankruptcy Code:

Document Ref: MC3KD-CIG6H-USYGP-O2VU5

8.2.1 Adequate notice to Subordinating Creditor shall have been provided if Subordinating Creditor receives notice five business day prior to the entry of the appropriate order; and

8.2.2 Subordinating Creditor will raise no objection thereto on the ground of a failure to provide adequate protection for Subordinating Creditor's security interest in the Senior Creditor Collateral.

## 9. NO DUTY TO PROVIDE FINANCIAL ACCOMMODATIONS. ADDITIONAL DEBT

9.1 Nothing contained herein or in any prior agreement or understanding between the Creditors shall be deemed to create any duty on the part of either Creditor to extend or continue to extend financial accommodations to the Debtor.

9.2 The Debtor may from time to time, subject to any limitations contained in the Senior Creditor Loan Agreement and Subordinating Creditor Loan Agreement in effect at such time, incur additional indebtedness and related obligations that are, or are to be, secured by liens on any assets of the Debtor that would, if such liens were granted constitute Senior Credit Collateral and shall deliver to each of the Subordinating Creditor and the Senior Creditor a certificate of an officer of the Debtor:

> (a)  Describing the indebtedness and other obligations  including a statement of the maximum aggregate outstanding principal amount of such indebtedness as of the date of such certificate.

> (b)  Certifying that the incurrence of such indebtedness, the creation of the liens securing such indebtedness and related obligations hereunder (i) do not violate or result in a default under any provision of the Senior Creditor Loan Agreement or Subordinating Creditor Loan Agreement  in effect at such time.

> (c)  Attaching a fully completed joinder agreement to this Agreement that was previously reviewed and accepted  by Senior Creditor and Subordinating Creditor.

Incurrence of additional debt by Debtor in violation of the procedure described in this Section 9 will be considered a breach and in violation of this Agreement.

## 10. CHOICE OF LAW.

10.1 This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, construed under, and enforced in accordance with the internal laws of the  State of Florida.

10.2 Each party hereto irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against any other party hereto in any way relating to this Agreement or the transactions contemplated hereby, in any forum other than the courts of the State of Florida sitting in Miami-Dade County and of the United States District Court of the Eleventh Judicial Circuit , and any appellate court from any thereof. Each of the parties hereto irrevocably

6

and unconditionally submits to the exclusive jurisdiction of such courts and agrees that any such action, litigation, or proceeding may be brought in any such Florida State court or, to the fullest extent permitted by applicable law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

10.3 Each party hereto irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court referred to in Section 10.2. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

10.4 Each party hereto irrevocably consents to the service of process in the manner provided for notices in Section 17 and agrees that nothing herein will affect the right of any party hereto to serve process in any other manner permitted by applicable law.

10.5 Waiver of Jury Trial. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE, OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

## 11. AMENDMENT AND WAIVER.

11.1 Only a writing signed by all parties hereto may amend this Agreement. No failure or delay in exercising any right hereunder shall impair any such right that Senior Creditor may have, nor shall any waiver by Senior Creditor hereunder be deemed a waiver of any default or breach subsequently occurring. Senior Creditor's rights and remedies herein are cumulative and not exclusive of each other or of any rights or remedies that Senior Creditor would otherwise have.

## 12. CONSTRUCTION OF AGREEMENT

12.1 This Agreement and all agreements relating to the subject matter hereof is the product of negotiation and preparation by and among each Party and its respective attorneys. This Agreement, which the parties hereto expressly acknowledge is a "subordination agreement" under section 510(a) of the Bankruptcy Code, shall be effective before, during, and after the commencement of an Insolvency Proceeding. All references in this Agreement to the Debtor shall include the Debtor as a debtor-in-possession and any receiver or trustee for the Debtor in any Insolvency Proceeding.

7

13. **BENEFITS OF THIS AGREEMENT.**

13.1 This Agreement is solely for the benefit of and shall bind the Creditors and their respective successors and assigns and no other entity shall have any right, benefit, priority, or interest hereunder.

13.2 In the event that Senior Creditor assigns its rights hereunder in connection with an assignment of the Senior Creditor Obligations, the assignee ("Assignee") shall enjoy the benefits hereof, without any requirement of the consent of the Subordinating Creditor so long as the Assignee notifies the Subordinating Creditor:

13.2.1 Of such assignment, and

13.2.2 That the Assignee agrees to bound by the terms hereof as if it were the Senior Creditor.

14. **TERM.**

14.1 The subordination by Subordinating Creditor as set forth herein may only be terminated with the written consent of the Senior Creditor.

14.2 The Senior Creditor must consent to the termination of this subordination upon the occurrence of all of the following:

14.2.1 Payment in Full of the Senior Creditor Obligations;

14.2.2 Termination of all Security Agreements which create Security Interests which secure the Senior Creditor Obligations.

14.2.3 Upon the occurrence of Sections 14.2.1 and 14.2.2, written receipt for a request for such consent is received by Senior Creditor from Subordinating Creditor.

15. **ATTORNEYS FEES.**

15.1 In the event that any Party finds it necessary to retain counsel in connection with the interpretation, defense, or enforcement of this agreement, the prevailing Party shall recover its reasonable attorney's fees and expenses from the unsuccessful Party. It shall be presumed (subject to rebuttal only by the introduction of competent evidence to the contrary) that the amount recoverable is the amount billed to the prevailing Party by its counsel and that such amount will be reasonable if based on the billing rates charged to the prevailing Party by its counsel in similar matters.

16. **COUNTERPARTS.**

16.1 This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an

Document Ref: MC3KD-CIG6H-USYGP-O2VU5

executed counterpart of the signature page to this Agreement by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement, and any Party delivering such an executed counterpart of the signature page to this Agreement by facsimile to any other Party shall thereafter also promptly deliver a manually executed counterpart of this Agreement to such other Party, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

17. **NOTICE.**

17.1 All notices shall be effective upon delivery to a recognized overnight delivery service of a properly addressed notice, delivery prepaid, with instructions to make delivery on the next business day with a copy sent by email. For purposes hereof, the addresses of the parties are as set forth below or as may otherwise be specified from time to time in a writing sent by one party to the other in accordance with the provisions hereof:

**<u>Subordinating Creditor</u>**

Address: 929 Alton Rd., Suite 500 Miami Beach, FL 33139
Attention: US Investment Manager LLC
Email: dennis@prudentgroup.us

**<u>Debtor</u>**

Address: 1241 Gnat Pond Road, Leighton, AL 35646
Attention: Ariel Gitman
Email: ariel@alliancemetalsusa.com

**<u>Senior Creditor</u>**

Address: 17001 Collins Avenue, Apt 1704, Sunny Isles Beach, FL 33160
Attention: Ekaterina Koroleva
Email: e.koroleva@truewindmgmt.com

[END OF DOCUMENT – SIGNATURE FOLLOWS]

Document Ref: MC3KD-CIG6H-USYGP-O2VU5

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered by their respective officers thereunto duly authorized as of the date first above written.

**Subordinating Creditor:**

PRUDENT CAYMAN INVESTMENT FUNDS
MASTER SPC - NORTH AMERICAN
OPPORTUNITY MASTER SP

By *Dennis Klemming*
Name: Dennis Klemming
Title: Director

**Debtor:**

Technocon International Inc.

By *Ariel Gitman*
Name: Ariel Gitman
Title: President

Alliance Metals LLC

By *Ariel Gitman*
Name: Ariel Gitman
Title: President

**Senior Creditor:**

Truewind Management LLC

By_____
Name: Ekaterina Koroleva
Title: Managing Director

1

**EXHIBIT A**

| FILING DATE | FILING NUMBER | FILING OFFICE JURISDICTION |
|:---:|:---:|:---:|
| 5/10/2023 | . 202301281322 | Florida |

1

# Signature Certificate

Reference number: MC3KD-CIG6H-USYGP-O2VU5

| Signer | Timestamp | Signature |
|---|---|---|
| **Ekaterina Koroleva**<br>Email: keinesommer@gmail.com | | |
| Sent: | 07 Nov 2023 22:11:07 UTC | |
| Viewed: | 07 Nov 2023 22:11:10 UTC | |
| Signed: | 07 Nov 2023 22:11:24 UTC | |
| | | IP address: 76.88.3.211<br>Location: San Diego, United States |

| **Ariel Gitman**<br>Email: ariel@alliancemetalsusa.com | | |
|---|---|---|
| Sent: | 07 Nov 2023 22:11:07 UTC | |
| Viewed: | 07 Nov 2023 23:22:11 UTC | |
| Signed: | 07 Nov 2023 23:48:01 UTC | |
| **Recipient Verification:** | | |
| ✔ Email verified | 07 Nov 2023 23:22:11 UTC | IP address: 174.218.248.154<br>Location: Tampa, United States |

| **Dennis Klemming**<br>Email: dennis@prudentgroup.us<br>Shared via link | | |
|---|---|---|
| Sent: | 07 Nov 2023 22:11:07 UTC | |
| Viewed: | 08 Nov 2023 02:49:19 UTC | |
| Signed: | 08 Nov 2023 02:49:46 UTC | IP address: 204.28.106.2<br>Location: Miami, United States |

Document completed by all parties on:
08 Nov 2023 02:49:46 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature solution trusted by 40,000+ companies worldwide.



## **Exhibit E**

**March 14, 2024 Correspondence**



**By email (larry@alliancemetalsusa.com; jacob@vgmtel.com)**

14 March 2024

Technocon International Inc (D/B/A Alliance Metals)
1111 Kane Concourse,
518 Bay Harbor Island,
Florida 33154, USA

Dear Sirs,

I refer to the:

1. Master Loan Agreement dated 11 September 2018 ("**MLA**") executed between Technocon International Inc (D/B/A Alliance Metals) ("**Debtor**") and Cayman Investment Funds Master SPC (In Official Liquidation), North America Opportunity Master SP (formerly known as Prudent Cayman Investment Funds Master SPC) ("**Lender**"); and

2. letter of the Joint Voluntary Liquidators ("**JVLs**') (now Joint Official Liquidators ("**JOLs'**)) to the Debtor dated 4 December 2023 advising of the appointment of the JVLs with effect from 31 October 2023.

I have been provided a copy of an Intercreditor Agreement dated 9 November 2023, purported to be executed between the Lender, the Debtor and Truewind Management LLC, a Florida limited liability company ("**Truewind**") ("**Intercreditor Agreement**").

As you are aware, upon the appointment of the JVLs all powers of the Directors of the Lender (including Mr Dennis Klemming) ceased.  In addition, U.S. Investment Manager, LLC was terminated as investment manager of the Lender with immediate effect.

Following the appointment of the JVLs on 31 October 2023, in accordance with section 119(5) of the Cayman Islands Companies Act (2023 Revision), Mr Klemming had no authority to act on behalf of the Lender in any capacity, and no authority to enter into any agreement or contract on behalf of the Lender.  Thus, the Intercreditor Agreement is null and void.

For the avoidance of doubt the Lender does not consent to any of the terms as set out in the Intercreditor Agreement and does not consent to any of the Lender's security interests being subordinated in any way.  To the extent that your position is that the Intercreditor Agreement is a valid agreement which creates binding obligations (which is denied), we note that in any event, the Intercreditor Agreement would be voidable under Cayman Islands law and the JOLs reserve all rights in this regard, including to claim costs against you in respect of any Court application(s) if considered necessary.

Please provide, within three (3) business days of the date of this letter:
- written confirmation that the Debtor accepts and agrees that the Intercreditor Agreement is null and void;

- full particulars of any indebtedness incurred by the Debtor, including any indebtedness incurred since the appointment of the JVLs;
- details of any assets, including, but not limited to, all receivables and deposits, over which a security interest has been granted to the Lender; and
- a copy of the Senior Creditor Loan Agreement as referenced in the Intercreditor Agreement.

In providing the above, please also provide written confirmation that all the above materials have been provided as requested, or where not, the reasons therefore.

Should you have any queries or require further information, please contact either myself or Jessica Bradbury of this office.  Our contact details are set out below:

| **Samuel Cole** | | **Jessica Bradbury** | |
|---|---|---|---|
| Office Direct: | +1 345 743 8814 | Office Direct: | +1 345 623 9907 |
| Mobile: | +1 345 525 2884 | Mobile: | +1 345 526 1114 |
| Email: | sam.cole@kroll.com | Email: | jess.bradbury@kroll.com |

The JOLs reserve all rights.

Yours sincerely

Samuel Cole
Joint Official Liquidator
Cayman Investment Funds Master SPC (In Official Liquidation) - North America Opportunity Master SP

**<u>Exhibit F</u>**

**March 18, 2024 Correspondence**



1 EAST BROWARD BLVD, SUITE 915
FORT LAUDERDALE, FL 33301
T. 954-237-1777  F. 954-237-1737

March 18, 2024

**VIA EMAIL**
Samuel Cole (sam.cole@kroll.com)
Jessica Bradbury (jess.bradbury@kroll.com)
Kroll (Cayman) Ltd.
PO Box 30847
Grand Kayman KY1-1204, Cayman Islands

*Re: Truewind Management LLC Intercreditor Agreement with Alliance Metals, LLC*

Dear Mr. Cole and Ms. Bradbury:

Our firm represents Technocon International, Inc. ("Technocon") and Alliance Metals LLC ("Alliance") (collectively "Clients"). Our clients provided us with your March 14 letter requesting that they confirm that the Intercreditor Agreement is null and void. Your concerns are misplaced. Further, your letter to Truewind Management LLC ("Truewind") is materially interfering with Alliance's ability to continue to do business and will cause it to cease operation leaving the Creditors no avenue to be paid the amounts Technocon owed to them.  Therefore, corrective measures must be taken immediately, if not sooner, particularly considering the many misapprehensions of fact that your letter confirms you are operating under.

First, you missed a crucial detail when you wrote to Truewind, as confirmed by your letter. Prudent does not have a security interest in Alliance's assets. Your letters list the Debtor as "Technocon (D/B/A Alliance Metals)." But Technocon is not a party to the Intercreditor Agreement. Only Alliance is. Alliance is a distinct entity. To that end, your UCC-1 Statement listing Alliance is unauthorized, which may subject Prudent to "damages in the amount of any loss caused by a failure to comply with this chapter, including damages suffered by the debtor resulting from the debtor's inability to obtain, or increased costs of, alternative financing…." § 679.625(2), Fla. Stat. (2023). The Intercreditor Agreement only exists because Prudent violated Florida law and filed an unauthorized UCC-1 Statement.

Second, as a result of your interference, Truewind has eliminated Alliance's financing creating impossible headwinds for Alliance. Truewind provided Alliance factoring financing allowing Alliance to receive funds upon delivery without waiting for the receivable to be paid. Truewind's security interest was limited to the receivables it actually financed. Thus, there is not even an overlap between any security interests you may have against Technocon's receivables, much less that of Alliance. In addition, Truewind was to provide Alliance with a thirty-million dollar line of credit. Truewind has informed Alliance that, as a result of your letter, it is eliminating its existing financing arrangement and will not advance the line of credit.

Lastly, your actions are a breach of your duties to the Creditors. Because of the unauthorized nature of the UCC-1s you filed and are now enforcing, and because the monies and security interests advanced by Truewind are for entirely independent receivables and with another



1 EAST BROWARD BLVD, SUITE 915
FORT LAUDERDALE, FL 33301
T. 954-237-1777  F. 954-237-1737

entity for which you have no contractual or other grounds to lien anything, Alliance is and will continue to suffer substantial damages.

Accordingly, since the cash flow issues created by your interference with Truewind's funding of Alliance's operations have caused emergent and existential threats, our Clients demand that you provide reasonable assurance within 24 hours that all such interference will cease and active mitigating efforts will be undertaken to assuage Truewind's concerns upon receipt of your letter.  Without such assurance and this matter being corrected without any delay, my clients will be forced to quickly initiate proceedings and reserve all their claims, defenses and damages, in law and in equity, concerning same.    Please take note of the foregoing and govern yourselves accordingly.


Very truly yours,


STOK KON + BRAVERMAN


*/s/Joshua R. Kon*
JOSHUA R. KON, ESQ.
For the Firm

## Exhibit G

**May 12, 2024 Correspondence**



**DLA Piper LLP (US)**
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

R. Craig Martin
craig.martin@us.dlapiper.com
T   302.468.5655
F   302.778.7834

May 12, 2024
*Via E-Mail*

Joshua R. Kon
Stok Kon + Braverman
1 East Broward Blvd., Suite 915
Fort Lauderdale, FL 33301

Re:    *Alliance Metals LLC v. C T Corporation Systems*, Case No.: 2024-006339-CA-01

Dear Mr. Kon:

I represent Mr. Mitchell Mansfield and Mr. Samuel Cole, in their capacity as the Joint Official Liquidators ("JOLs") of Cayman Investment Funds Master SPC (In Official Liquidation) ("the Master Fund") and Cayman Investment Funds SPC (In Official Liquidation) ("the Feeder Fund").

As you are aware, the Master Fund has contended that it has a valid lien on Alliance Metals LLC's collateral because of a Master Loan Agreement, dated September 11, 2018, between the Master Fund and "Technocon International Inc. d/b/a Alliance Metals."  On November 9, 2023, Alliance Metal LLC's president, Ariel Gitman, signed an Intercreditor Agreement in which he acknowledged that the Master Fund "has agreed to extend credit to the Debtor", defined in the Intercreditor Agreement as Technocon International Inc. and its subsidiary Alliance Metals LLC, and that the Master Fund's obligations are "secured by liens on and security interest in all of the Debtor's now-existing and hearing after acquired assets."

As explained in letters from Mr. Cole and others to Ms. Ekaterina Koroleva and Technocon International Inc (D/B/A Alliance Metals), that Intercreditor Agreement was not validly signed by the Master Fund as it was signed after the appointment of the JOLs as Joint Voluntary Liquidators on 31 October 2023.  You acknowledged receipt of these letters in your correspondence to Mr. Cole dated March 18, 2024, that you wrote on behalf of your clients, both Technocon International, Inc. and Alliance Metals LLC.  You state in that correspondence that "Technocon is not a party to the Intercreditor Agreement. Only Alliance is. Alliance is a distinct entity. To that end, your UCC-1 Statement listing Alliance is unauthorized . . .."  A review of the preamble and signature pages reveals, however, that Mr. Ariel Gittman signed the Intercreditor Agreement on behalf of both Technocon and Alliance.  Technocon is a party to the Intercreditor Agreement and all your contentions in the March 18, 2024 letter are incorrect.

What the Intercreditor Agreement also shows is that your client, Alliance, and you as counsel to Alliance, were aware that the Master Fund, acting through the JOLs, had asserted valid liens in Alliance's assets and indeed Alliance had acknowledged those very liens in the Intercreditor Agreement.



Joshua R. Kon
May 12, 2024
Page Two

Yet, when you commenced litigation over these issues, you sued C.T. Corporation Systems and did not provide any notice to the JOLs. You are now in the process of seeking to obtain a default judgment without affording the JOLs and the Master Fund the due process of law to which they are entitled. The JOLs, not having received notice, were not aware of Alliance's action until May 7, 2024, only two days before you filed a notice of a default judgment.

Accordingly, the JOLs demand that Alliance voluntarily vacate the default judgment and either name the Master Fund as the real party in interest whose financial and legal rights you seek to effect in the litigation against C.T. Corporation Systems, or that you notify the Court of the Master Fund's interest in the litigation so it may file a motion to intervene or take other appropriate action to protect the Master Fund's security interest in Alliance Assets.

I am available to meet and confer over these issues; in the meantime, the JOLs reserve their rights and those of the Master Fund with respect to Alliance's attempt to disavow the security interest it acknowledged as valid in the Intercreditor Agreement.

Sincerely,

R. Craig Martin

## **Exhibit 7**

**Amended Notice of Hearing**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.: 2024-006339-CA-01**

**SECTION:**                CA06

**Alliance Metals LLC**
**Plaintiff(s),**

**vs.**

**C T Corporation System**
**Defendant(s)**
_____/

<u>**ZOOM/VIRTUAL**</u>
<u>**NOTICE OF SPECIAL SET HEARING**</u>
**(1) Plaintiff's Motion for Final Default Judgment Against Defendant CT Corporation
System (2) Defendant's Motion to Vacate Clerks Default and (3) Motion To Intervene**

    **YOU ARE HEREBY NOTIFIED** that, a Special Set hearing on the above cause is scheduled for _____**1 hr**_____ on ____**06-28-2024 at 11:00 AM**____ in Room   Virtual courtroom.

Virtual Court is held remotely on the Zoom platform. You will receive an email from the Court with the information you need to connect to your event by video or phone if you are on the E-Filing Portal service list.  If you do not receive an email, check the judge's webpage for the Zoom link to their virtual courtroom or further instructions. You may also register for text notification via link https://cmap.jud11.flcourts.org/ebench/textNotificationsRegistration.jsp.

IT IS THE RESPONSIBILITY OF THE SCHEDULER TO PROVIDE TIMELY NOTICE OF THE ZOOM MEETING DETAILS TO ANY PARTY NOT REGISTERED ON THE E-FILING SERVICE PORTAL.

<u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above notice was delivered to the parties below on _____**06-14-2024**_____.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:
Electronically Served

Joshua R. Kon, jkon@stoklaw.com
Joshua R. Kon, gortiz@stoklaw.com
Mitchell Mansfield, ardith.bronson@dlapiper.com
Mitchell Mansfield, ardith.bronson@dlapiper.com
Mitchell Mansfield, ardith.bronson@dlapiper.com
Nicole McLemore, nicole.mclemore@us.dlapiper.com
Nicole McLemore, nicole.mclemore@us.dlapiper.com
Nicole McLemore, nicole.mclemore@us.dlapiper.com
Mitchell Cohen, mcohen@stoklaw.com
Mitchell Cohen, gortiz@stoklaw.com
Rachel Nanes, rachel.nanes@dlapiper.com
Rachel Nanes, monica.tucker@dlapiper.com
Rachel Nanes, yohami.lamguerra@dlapiper.com
Ardith M Bronson, ardith.bronson@us.dlapiper.com
Ardith M Bronson, tratasha.mccloud@us.dlapiper.com
Ardith M Bronson, eservicemiami@us.dlapiper.com
Robert A. Stok, service@stoklaw.com
Robert A. Stok, ssolis@stoklaw.com